## J. RALPH KIRKLEY vs. F. H. ROBERTS COMPANY.

Suffolk.   February 11, 1929. — July 3, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract*, Consideration, Construction, Validity, Modification, Of employment.

A corporation, to induce a salesman then in other employment to enter its employ, promised him a contract in writing and, by reason of that promise, the following contract in writing was made: "[the corporation] promises and agrees to employ said [salesman], . . . as its sales agent and to retain him in its employ as long as he shall faithfully and diligently perform the duties of his employment, said . . . [salesman] . . . to sell upon a commission basis of ten per cent on all sales made by him or otherwise obtained in his exclusive territory, which territory of his, as defined, shall be such territory as he, said . . . [salesman] . . . , shall acquire by his personal effort and diligence and which shall not conflict with other territory belong [*sic*] to, or obtained by other agents of said . . . [corporation] . . . ; payments by said . . . [corporation] . . . to said . . . [salesman] . . . to be made monthly beginning March first of the current year. And said . . . [salesman] . . . on the other hand promises and agrees that he will enter the employ of said . . . [corporation] . . . as commission sales agent and will faithfully and diligently perform the duties of his employment, and he further promises and agrees to give his sole and undivided attention thereto as long as this contract shall continue." *Held*, that

(1) There was a sufficient consideration moving from the salesman to the corporation;

(2) The contract was not too indefinite by reason of the fact that the territory to become exclusively the salesman's depended upon future action;

(3) The promise that the duration of the employment was to be "as long as he shall faithfully and diligently perform the duties of his employment," and the absence of a promise on the salesman's part to remain with the corporation for any definite time did not invalidate the contract, nor, of itself, make it terminable at the will of the corporation: the contract bound the corporation so long as the salesman faithfully and diligently performed and was willing and able to perform the prescribed duties at the compensation fixed.

At the trial of an action of contract by the salesman against the corporation for wrongful termination of the contract above described, there was evidence of dealings between the parties which could be found to have fixed the territory exclusively the plaintiff's, to have modified in part the commission payable upon certain orders within the territory, and

to have modified the method of making sales by the plaintiff; but such evidence left the relations of the parties, in the main, those laid down in the written contract, which could still be looked to for the determination of their respective rights, and it was *held*, that the judge properly refused to rule as matter of law that such modifications as could be found to exist were so material and so extensive that the original contract had disappeared.

At the trial of an action by the salesman against the corporation for sums alleged to have been withheld unwarrantably from the plaintiff by the defendant during the life of the contract in writing above described, the evidence as to items in dispute and the contentions of the parties as to the application of such evidence to a proper construction of the contract were conflicting; and it was *held*, that the trial judge could not properly grant a motion that a verdict be ordered for the defendant, there being controverted issues of fact which must be determined before the rule of law applicable in the circumstances could be ascertained.

CONTRACT with a declaration described in the opinion. Writ dated September 10, 1923.

In the Superior Court, the action first was tried before *Broadhurst*, J. It appeared that the defendant manufactured and dealt in confectionery, its principal product being "Apollo Chocolates." Material evidence is described in the opinion. Of the exceptions relating to rulings on evidence dealt with in the last paragraph of the opinion, the following occurred at the first trial:

1. The plaintiff had been testifying without objection to refusals by him, after his relations with the defendant had been terminated, of offers of employment by other dealers in confectionery "because he did not think their candy was as good as Apollo, and the proposition of the Apex Company was problematical, as they wanted to manufacture a piece of goods that would fit into the proposition of the plaintiff, who was not interested." He then was asked, "What line of high priced goods in your opinion compares with the Apollo product?" The defendant objected. The trial judge ruled: "I think the objection would be well taken if it weren't for the fact that he had already expressed an opinion as to the comparative qualities of Apollo and several other kinds of candy. I think I will let you have it, although I don't think that the plaintiff as a matter of law is entitled to refuse employment in the candy business simply because in his opinion

there isn't anybody who makes candy as good as Apollo. That is, I take it, the basis of the objection fundamentally; there may be others than that; that is one." The plaintiff, subject to exceptions by the defendant, then answered: "In my opinion there isn't any."

2. The plaintiff testified relating to a conversation which he had in August, 1923, with one Cole, described in the auditor's report as one "to whose discretion the entire determination of sales policy [of their employer] was committed," and who, it appeared, in 1912 had become a vice president of the defendant and, at the time of the trial, was its president. The testimony was in answer to a question, "Did you have a talk with him then," and was as follows: "I did. I said, 'At the suggestion of Mr. Hayes, I am here to see if we cannot make some arrangements whereby everything is not chaos,' or something to that effect. He sat there, and I says, 'Bill, it is all wrong for you to sit there like a czar or a king and say nothing. Now that isn't right; that is just nothing, that kind of stuff is dead.' Well, he said nothing. 'Now,' I said, 'Listen, I have extended every opportunity, I have gone to every avenue I can travel; this proposition is sacred to me; I have laid more on the footstool of this business I think than any man connected with it.' . . . 'Don't lose sight of the fact that what modest success I have had with this business has been done with a foreign trade outside of the home market of New England, and this business is sacred to me, and for you to sit there and absolutely abhor the question or make any kind of a decent answer to me about this thing is nothing short of a sin, an absolute sin,' and he wouldn't answer me." The defendant's counsel moved that the testimony be struck out. After a colloquy of the trial judge with counsel, the judge stated that "the defendant stated to the court in answer to his inquiry that his objection to the answer last given by the witness, and his motion to strike out the answer was based on the assertion that the subject of the conversation was a matter of compromise or attempted compromise between the parties. The motion is denied and the defendant's exception is saved."

3. In cross-examination, Cole was asked, subject to exception by the defendant, "Now at this conference in July, 1923, you made a proposition to Mr. Kirkley, did you not, in regard to the terms under which you would continue Mr. Kirkley in your employ?" and answered, "Yes."

At the close of the evidence at the first trial, the defendant asked for the following rulings:

"7. There was no consideration for the execution of the contract of January 28, 1905, except such agreements as are therein contained.

"8. If the jury find there was no consideration for the execution of the contract of January 28, 1905, except such agreements as are therein contained, the defendant could terminate this contract at will and the plaintiff cannot recover on the First Count of his declaration.

"9. Whatever contract may have been made in January, 1905, . . . was modified by the parties as to territory, rate of commission and nature of employment in 1923.

"10. The contract of January 28, 1905, had been so far modified by the parties before 1923 that it was no longer in force.

"11. By the contract of January 28, 1905, the defendant had the right to restrict the plaintiff to such territory as he could cover personally in a satisfactory manner.

"12. Under the terms of the employment of the plaintiff by the defendant in 1923 either party could terminate the instrument at will."

The rulings were refused.

There was a verdict for the plaintiff on the first count in the sum of $39,745, and on the second count in the sum of $1. The verdict on the second count was set aside.

There was a new trial on the second count before P. J. O'Connell, J. Issues at that trial are described in the opinion. After Cole, in cross-examination, had testified that he did not tell the plaintiff in December, 1922, that he was contemplating a change in Pennsylvania, that he had been in communication with Cummings prior to the conference of February, 1923, that he did not remember that Cummings had asked for western Pennsylvania,

and that he had no recollection exactly what Cummings had asked for, the following telegrams were admitted in evidence, subject to the defendant's exception: a telegram, dated January 2, 1923, from Cummings to Cole: "You may submit proposition for Ohio. Cannot understand why you have nothing to offer in Pennsylvania which is my big asset," and a telegram, dated January 2, 1923, from Cole to Cummings: "If possible arrange trip to Boston immediately, our expense. Wire answer."

Cole then testified that Cummings was in Boston twice before the conference of February 9, 1923; that he discussed with Cummings in January the proposition of Cummings taking the Ohio territory; that he knew Cummings had asked for the plaintiff's western Pennsylvania territory and that Cummings considered that district was his best asset; that he, Cole, knew that Pennsylvania was the plaintiff's exclusive territory and that Cummings was asking for part of the plaintiff's territory; that he, Cole, refused that to Cummings. Subject to exception by the defendant, the following telegram from Cummings to Cole dated January 9, 1923, then was admitted in evidence: "In justice to us both cannot accept Ohio territory now. Letter following."

There was a verdict for the plaintiff on the second count in the sum of $15,790.17, of which, by order of court, the plaintiff remitted all in excess of $5,105.51.

The defendant alleged exceptions.

*C. W. Blood*, (*W. Flaherty* with him,) for the defendant.

*E. A. McLaughlin*, (*W. K. Kelleher* with him,) for the plaintiff.

WAIT, J. The plaintiff sues at law for breaches of an agreement in writing which bears date January 28, 1905. The first count seeks recovery of damages for wrongful termination of the contract. The second seeks damages for breaches occurring during the life of the contract. The case is before us upon two bills of exceptions taken by the defendant; one for alleged errors relating to the first count, the other for alleged errors arising in the course of a second trial on the second count. In both, the defendant contends that

erroneous rulings were made relating to evidence, and that requests for rulings and motions for directed verdicts were denied wrongfully. No exception is claimed to the instructions given to the juries.

The contract was made between the plaintiff and F. H. Roberts Company, a Massachusetts corporation which was reorganized in 1908 and in 1911; but no contention is made that the later corporation is not liable if the original corporation would have been. The material provisions of the contract are as follows: "[F. H. Roberts Company] promises and agrees to employ said Kirkley, . . . as its sales agent and to retain him in its employ as long as he shall faithfully and diligently perform the duties of his employment, said . . . [Kirkley] . . . to sell upon a commission basis of ten per cent on all sales made by him or otherwise obtained in his exclusive territory, which territory of his, as defined, shall be such territory as he, said . . . [Kirkley] . . . , shall acquire by his personal effort and diligence and which shall not conflict with other territory belong [*sic*] to, or obtained by other agents of said . . . [F. H. Roberts Company] . . . ; payments by said . . . [F. H. Roberts Company] . . . to said . . . [Kirkley] . . . to be made monthly beginning March first of the current year. And said . . . [Kirkley] . . . on the other hand promises and agrees that he will enter the employ of said . . . [F. H. Roberts Company] . . . as commission sales agent and will faithfully and diligently perform the duties of his employment, and he further promises and agrees to give his sole and undivided attention thereto as long as this contract shall continue." At the time it was executed, the plaintiff was employed in Pennsylvania and New Jersey by third parties, and the company was seeking to extend its business beyond New England except Rhode Island, and part of New York State where one other sales agent was at work. The plaintiff, considering whether to leave his then employer and throw in his lot with the company, was promised a written contract if he would go with the company. He decided so to do, and received this written agreement. Here was sufficient consideration for the promise of employment. *Revere* v. *Boston Copper Co.* 15

Pick. 351. *Carnig* v. *Carr,* 167 Mass. 544. The contract is not too indefinite. The nature of the work, and the compensation to be paid are precise. The territory to become exclusively his depends upon future action; but a contract is not necessarily incomplete because some of its terms must be fixed at a future time or by subsequent events. *Evers* v. *Gilfoil,* 247 Mass. 219. *Speirs* v. *Union Drop Forge Co.* 174 Mass. 175. *Silver* v. *Graves,* 210 Mass. 26. *Williams* v. *Knibbs,* 213 Mass. 534. The duration of the employment is stated to be "as long as he shall faithfully and diligently perform the duties of his employment." There is no promise on the commission agent's part to remain with the company for any definite time. This does not invalidate the contract, nor, of itself, make it terminable at the will of the company. Whatever may be the law elsewhere, it is settled by the decisions already cited, *Revere* v. *Boston Copper Co., supra,* and *Carnig* v. *Carr, supra,* that here a contract in the terms of the one before us is binding upon the company so long as the agent faithfully and diligently performs and is willing and able to perform the prescribed duties at the compensation fixed. *Daniell* v. *Boston & Maine Railroad,* 184 Mass. 337. *Elwell* v. *State Mutual Life Assurance Co.* 230 Mass. 248. *Edmund D. Hewins, Inc.* v. *Marlboro Cotton Mills,* 242 Mass. 282. *Proctor* v. *Union Coal Co.* 243 Mass. 428. We see nothing in *Emerson* v. *Ackerman,* 233 Mass. 249, cited by the defendant, which is to the contrary. *Pierce* v. *Tennessee Coal, Iron & Railroad Co.* 173 U. S. 1. The judge could not properly, therefore, direct verdicts for the defendant on the ground that no binding contract existed, or that it was terminable at the will of the company.

The defendant further contends that the contract had been so modified that it had ceased to exist. The case differs from *Rosenfeld* v. *Standard Bottling & Extracts Co.* 232 Mass. 239, in which all the terms of the original contract had been superseded. Here there was evidence of dealings between the parties which could be found to have fixed the territory exclusive to the plaintiff, to have modified in part the commission payable upon certain orders within the territory, and, possibly, to have modified the method of making sales by the

plaintiff; but the relations of the parties, in the main, were those laid down in the written contract. It could still be looked to for the determination of their respective rights. The judge could not rule, as matter of law, that such modifications as could be found to exist were so material and so extensive that the original contract had disappeared. We see no error in the denials of the motions to direct verdicts for the defendant.

Nor do we find reversible error in the refusals to instruct the jury as requested at the first trial with reference to the first count. What has been said disposes of the rulings asked as law in the seventh, eighth, tenth and twelfth requests. The ninth request relates to matter of fact, and was covered by the charge so far as matter of law is concerned. The eleventh request was not given. We have no doubt that the defendant as incident to the management of its business had the right to control to some extent the territory which the plaintiff could enter upon; but the request is so limited in its language that the judge was not in error in refusing to give it. We cannot see any prejudice to the defendant from the refusal, in the state of the evidence. Whether the control that the defendant sought to exert, and whether its conduct in placing an agent in western Pennsylvania, which might well be found to have been exclusive territory of the plaintiff, were justifiable under the contract involved fact as well as law. The subject matter was dealt with in the charge, and no exception was claimed to what was said. There was evidence that after instructions by the defendant to keep away from western Pennsylvania, the plaintiff visited Altoona, a town forbidden to him. This action may well be found to have been an assertion of right under the contract and not unfaithful conduct. If the defendant wished to have the jury instructed with reference to this matter the eleventh request was inadequate.

The defendant contends that there was error in the denial of the motion for a directed verdict in its favor at the second trial on the second count, because, even if the contract was valid, the plaintiff could not recover items which he sought. Whether the plaintiff could recover for commissions on sales

in southern New Jersey, for deduction made on account of transportation charged, for alleged deductions due to adding taxes to the prices charged to customers, for reduced commissions on sales of certain goods, and commissions for sales made in 1923 by an agent sent, as he claimed wrongfully, into western Pennsylvania, depended on questions of mixed law and fact. Whether in accepting commissions on sales made in Baltimore and Washington, the plaintiff assented to modification of his exclusive territory or waived his right to insist upon the contract was, in the condition of the evidence, fairly question of fact for the jury. The judge could not properly grant this motion so long as there were controverted issues of fact which must be determined before the rule of law applicable in the circumstances could be ascertained. There is no validity in this contention.

The defendant properly waived many of the exceptions to rulings upon evidence. We find no error in those now insisted upon. The telegrams from Cummings to the defendant were relevant to the issue of the sending of Cummings into territory claimed by the plaintiff; what was said at the conference in New York between the parties was clearly competent; the plaintiff's opinion on the lines of high priced goods comparable with Apollo products was relevant on the issue of his conduct after the discharge by the defendant in endeavoring to obtain another employment; and whether or not what was said in July, 1923, was protected as propositions for compromise was question of fact for the judge, whose decision we cannot say was clearly wrong. Although rulings to the contrary might have been proper in the discretion of the trial judge, we are unable to find that the defendant has suffered from the rulings made, or to believe that the evidence admitted affected the result of the trial.

*Exceptions overruled.*