Alfred M. JOHNSTON et al., Trustees,
Plaintiffs, Appellants,

v.

HOLIDAY INNS, INC., Defendant,
Appellee.

No. 77–1149.

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1977.

Decided Nov. 15, 1977.

Mario Misci, Boston, Mass., with whom F. Lee Bailey, Boston, Mass., was on brief, for plaintiffs, appellants.

Samuel Hoar, Boston, Mass., with whom Goodwin, Procter & Hoar, Boston, Mass., was on brief for defendant, appellee.

Before COFFIN, Chief Judge, TUTTLE,* Circuit Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

This diversity case requires the court to apply long-established principles of contract law to a complicated modern business transaction. Plaintiffs, Alfred Johnston and Daniel Greenwood (hereinafter "appellant") entered into negotiations with defendant, Holiday Inns of America, Inc. (hereinafter "appellee"), to facilitate building a restaurant-motel complex on land that appellant owned. In May, 1968, appellee signed an instrument denominated a "Memorandum Agreement" that outlined the transaction. It provided that the parties would form a nominee trust to which the appellant would

transfer the real estate and which in turn would lease the real estate to the appellee for a 20 year term. The Memorandum Agreement also recited that the nominee trustees would arrange a mortgage note, deed, and security agreement for $1,600,000 and that appellant would receive $60,000 per year for 20 years from the appellee.[1]

Thereafter the parties continued to negotiate and executed documents carrying out the provisions of the Memorandum Agreement. In addition the appellee formed a subsidiary (Boston Holiday) that entered a joint venture agreement with the appellant. The joint venture agreement incorporated many of the provisions of the Memorandum Agreement including a clause, requiring the subsidiary to pay $60,000 per year to plaintiff, but not explicitly making appellee a guarantor of that payment. In all, more than 50 documents were assembled by the time the parties were prepared to close the deal on June 28, 1968.

According to testimony for appellee, appellant, in a phone call on June 25, 1968, refused to close without a four year guarantee by appellee of the $60,000 annual payments. Appellee drafted such a letter, dated June 26, 1968, signed it, and delivered it to appellant. Appellee made payments at the agreed rate for four years. No payments were made after August 1, 1972.

This appeal grows out of appellant's suit for the balance due on appellee's 20 year guarantee. Appellant filed a motion for summary judgment which was denied. The case was tried to a jury. The court instructed the jury that it could find for the appellee if it found that the Memorandum Agreement "was not a binding contract or if there was a binding contract and a sub-

---

* Of the Fifth Circuit, sitting by designation.

1. The payment provisions were set out in Section 8 of the Memorandum Agreement:

    "8. The Nominee Trustees will at the time of execution of said lease agree that from the rental annually paid and received thereunder, after payment of the amounts due the mortgagee bank or insurance company to pay the principal and interest required, pay SIXTY THOUSAND DOLLARS ($60,000.00) per year in monthly payments of FIVE THOU-SAND DOLLARS ($5,000.00) each to the [appellant] in the form of salaries or other form determined by Holiday and Holiday agrees at the end of each month during the twenty (20) year period following the date of the commencement of said lease to pay to the [appellant] FIVE THOUSAND DOLLARS ($5,000.00) less such amounts as there shall be surplus rent if any, sufficient to pay the same."

stitution occurred or it was modified and the defendant carried out everything under the modification or substitution." The jury returned a verdict for appellee. Appellant raises issues concerning each of the jury's possible decision routes. We will examine each in turn.

■ Appellant first suggests that the court erred in admitting evidence on the issue of whether the parties intended the Memorandum Agreement to be a binding contract. Appellant argues that this is an issue of law and that the parol evidence rule bars the use of extrinsic evidence to determine the intent of the parties to an unambiguous written agreement. Massachusetts courts have made it very clear, however, that the parol evidence rule does not come into play until there is a contract.[2] "Before the [parol evidence rule] can be applied, the court must be sure that it has before it a written contract—a writing, or writings, signed by the parties and intended by them as a statement of their complete agreement." *Welch v. Bombardieri,* 252 Mass. 84, 87, 147 N.E. 595, 596 (1925). In *Welch* "the writings . . . did not contain, and were not understood to contain, all the terms of a binding agreement." *Id.* Therefore, evidence of a contemporaneous oral agreement supplementing the writing should have been admitted. The case was remanded for trial to a jury. The district court here found that it could not be sure the Memorandum Agreement was meant to be a binding contract, let alone a complete statement of the agreement.

There is ample evidence in the record to support this threshold conclusion. "Ordinarily the question whether a contract has been made is one of fact. If the evidence consists only of writings, or is uncontradict-

ed, the question is for the court; otherwise it is for the jury." *Bresky v. Rosenberg,* 256 Mass. 66, 75, 152 N.E. 347, 351 (1926).[3] Appellee denied that the document was a contract, showed that the ultimate transaction was set forth in a great number of documents, and presented oral testimony concerning the context of those documents that was relevant to the issue of the existence of a contract. Specifically, witnesses for appellee testified to the June 25 telephone conversation with a representative of appellant which was relevant to the significance of the June 26 letter and to the parties' understanding of the importance of the other documents. Therefore, the court was correct to submit the question to the jury.

■ Appellant correctly points out that the recitation on the Memorandum Agreement that it is under seal gave it the effect of a sealed instrument. But appellant is not correct that the instrument was, therefore, conclusively a binding contract. Mass. Gen.Laws Ann., ch. 4, § 9A, does no more than say when a writing has the effect of a sealed instrument. It does not say what that effect is. Unless a seal is required to make an instrument valid, the court may treat the seal as pure "surplusage" and carry out the intention of the parties in accordance with ordinary contract rules. *Johnson-Foster Co. v. D'Amore Constr. Co.,* 314 Mass. 416, 421, 50 N.E.2d 89 (1943).

We conclude that the evidence of the negotiations carried on and documents drafted before and after the Memorandum Agreement were properly admitted into evidence. The jury would have been entitled to find that the Memorandum Agreement was not a binding contract. We do not

---

**2.** Much of appellant's cited authority is readily distinguishable on this basis because it presupposes the existence of a "contract" and then decides whether that contract is sufficiently ambiguous to permit the use of extrinsic evidence as an interpretative aid. *See, e. g., Homestake-Sapin Partners v. United States,* 375 F.2d 507 (10th Cir. 1967).

**3.** Appellant cited *A.B.C. Auto Parts, Inc. v. Moran,* 359 Mass. 327, 268 N.E.2d 844 (1971), for the proposition that parol evidence cannot

supplement a written contract. That case, however, referred only to the memorandum necessary to prove a contract that is within the Statute of Frauds. Appellee here, however, was not attempting to uphold the validity of a contract evidenced by the Memorandum Agreement; rather, it sought to show that the Memorandum Agreement itself was not a contract. The Statute of Frauds is not relevant to this aspect of the case.

know, however, whether the jury did reach that conclusion. It may have found that the Memorandum Agreement was a contract but that appellee was not liable because the contract was modified or substituted by novation. Therefore, if the court charged incorrectly as to either of those alternatives, a new trial would be necessary.

Appellant asserts as error the following instruction: "You may find that on all the evidence the telephone conversation of June 25, 1968, and the letter agreement of even date,[4] functioned to modify the Memorandum Agreement. You may find on all the evidence that the letter agreement of June 26, 1968 was an effective subsequent modification of clause 8 of the Memorandum Agreement." Appellant argues that the Statute of Frauds, Mass.Gen.Laws Ann., ch. 259, § 1 (1959), requires any modification of the Memorandum Agreement to be in writing. The threshold question is whether appellant properly preserved this issue at trial. Appellee asserts that appellant's request for an instruction that the Memorandum Agreement was within the Statute of Frauds, without more, was properly refused because appellant "failed to request any instructions as to the significance of the agreement being within the Statute of Frauds". Appellee's assertion is without merit. In addition to the requested instruction that the Memorandum Agreement was within the Statute of Frauds, appellant requested the following two instructions and took exception to their not being given, thus preserving the issue for appeal:

"7. The jury may not consider any testimony, or any document not signed by the plaintiffs, to vary the provisions of Section 8 of the Memorandum Agreement. *Lampasona v. Capriotti,* 296 Mass. 34, 4 N.E.2d 621; Williston, Contracts, § 593.

8. The agreement of the defendant to pay the plaintiffs $5,000.00 per month for 20 years as set forth in Section 8 of the Memorandum Agreement could not be reduced without a memorandum signed by the plaintiffs to that effect."

These three requests, in combination, set out appellant's theory of the significance of the Statute of Frauds to this case. Appellee's own requests for instructions addressed the effect of the Statute of Frauds on the letter agreement. The trial court chose appellee's interpretation of the law. We must decide whether that choice was an error.

The guarantee in the Memorandum Agreement was governed by the Statute of Frauds, *supra,* as a contract that "is not to be performed within one year from the making thereof." Therefore, it must be evidenced by a writing "signed by the party to be charged therewith." *Id.* Appellee set up the modification from twenty to four years as a defense to appellant's suit on the written agreement. The agreement as modified was still within the Statute of Frauds. The letter of June 26 incorporating the modification was not signed by appellant. Therefore, to the extent appellee seeks to use the letter against appellant, it must be deemed an oral modification. *See Lampasona v. Capriotti,* 296 Mass. 34, 36, 4 N.E.2d 621 (1936). "The general rule is that an oral modification . . . of a written contract which originally was and as modified is within the statute of frauds, cannot be wholly or in part the *foundation of an action." Id.,* 296 Mass. at 38, 4 N.E.2d at 623 (emphasis supplied).

■ Appellee seeks to avoid the requirements of the Statute of Frauds by invoking the *"Cummings* rule", a doctrine accepted in Massachusetts under which "in defence to an action on the written contract [within the Statute of Frauds], the defendant may show that he has performed it according to an oral agreement for a substituted performance." *Rosenfeld v. Standard Bottling & Extracts Co.,* 232 Mass. 239, 245, 122 N.E. 299, 300 (1919), citing *Cummings v. Arnold,* 44. Mass. (3 Met.) 486 (1842). The narrow

4. We find no evidence of any letter agreement other than the one dated June 26. Therefore, we assume that "the letter agreement of even date" refers to the letter dated June 26, which was apparently prepared June 25 and bears a notation tying it to the phone call of June 25.

question before us is whether an agreement to reduce the term of a guarantee from 20 years to 4 years is a substituted performance such that this doctrine operates to excuse the fact that the modification was not set out in a writing signed by the obligor.

In *Cummings,* the case in which Massachusetts adopted this doctrine, plaintiff sued on a written contract calling for defendants to deliver a quantity of cloth at a stipulated price. Defendants admitted not having delivered the called for quantity, but they offered as a defense that plaintiff had not complied with oral agreements calling for plaintiff to pay cash for the goods in return for a 5 percent discount on the stipulated price. The trial court rejected this defense as a matter of law. The Supreme Judicial Court treated the written contract as one governed by the Statute of Frauds. The court's understanding of the Statute of Frauds was that it "requires a memorandum of the bargain to be in writing, that it may be made certain; but it does not undertake to regulate its performance. It does not say that such a contract shall not be varied by a subsequent oral agreement for a substituted performance." 44 Mass. at 491. While a plaintiff could not sue upon the oral modification, a defendant was entitled to set it up as a defense so long as the defendant could show that the oral modification was supported by consideration and that the defendant had performed (or been ready to perform) according to the oral agreement. *Id.* The plaintiff must "declare on the written contract, and the defendant will be bound to prove a performance according to the terms of it, or according to the terms of a substituted performance; and performance in either way may be proved by parol evidence." *Id.* at 493. Because "the oral agreement . . did not vary the terms of the written con-

tract as to [defendants'] performance . . . [,] the only alteration [being] as to the time of payment by the plaintiffs", the court held that the Statute of Frauds did not bar the defense and remanded the case for a new trial.

The *Cummings* rule relies on the distinction between a plaintiff's cause of action on a parol modification and a defendant's reliance on such a modification to avoid undermining the essential functions of the Statute of Frauds. *Id.* at 491–92.[5] No one can be held responsible for a contract within the Statute that is not in writing. The rule merely prevents a writing from being used to hold a party to more than the final agreement.

■ *Stearns v. Hall,* 63 Mass. (9 Cush.) 31 (1851), muddied the theoretical base of the *Cummings* rule. Plaintiff sued on a written contract, within the Statute of Frauds, by which he agreed to buy a house from defendant. The price was to be paid within a certain time. Plaintiff did not make payment within that time but offered to prove that defendant had agreed to an extension of time. Defendant argued that the Statute of Frauds barred the case and that the *Cummings* rule was not applicable because "here the party relying on the parol agreement seeks to charge the defendant upon it." *Id.* at 34. Nonetheless, the court held on the basis of *Cummings* that the statute of frauds did not bar the suit. Plaintiff may prove satisfaction of an oral substituted performance on the presumption that plaintiff would have performed according to the terms of the original contract except that defendant "by his own act . . . prevented the plaintiff from making the payment within the time limited in the original contract." *Id.* at 35–36. The court's logic demonstrates that this is not

---

5. In *Hastings v. Lovejoy,* 140 Mass. 261, 2 N.E. 776 (1885), the court, in dictum, attributes to *Cummings* the rule that "a subsequent oral agreement may enlarge the time of performance, or may vary any other terms of the contract, or may waive and discharge it altogether" even where "the original contract fell within the operation of the statute of frauds." *Id.,*

140 Mass. at 264–65, 2 N.E. at 777. This of course overstates the rule by ignoring what *Cummings* saw as the crucial distinction. As even the *Hastings* court recognized, this broad rule is simply the normal rule that applies to normal written contracts. *Id.* at 264, 2 N.E. 776. It gives no effect to the Statute of Frauds.

an expansion of the *Cummings* rule but an exception based on a theory of estoppel. Equity can prevent the Statute of Frauds from becoming a vehicle by which one can escape from an unfortunate contract. The Supreme Judicial Court ultimately recognized *Stearns* as an exception based on estoppel to the rule permitting only defensive use of an oral modification. *Lampasona v. Capriotti, supra,* 296 Mass. at 38, 4 N.E.2d 621 (dictum).

*Whittier v. Dana,* 92 Mass. (10 Allen) 326 (1865), without precisely explaining *Stearns,* turns upon the *Cummings* distinction. Plaintiffs set out a written contract within the Statute of Frauds and a breach thereof, "but the plaintiffs go further, and allege the extension of the contract time by agreement of the parties, and a breach of the new agreement." 92 Mass. at 328. The court held that under the *Cummings* rule plaintiffs could not rely on an oral modification of the contract; although, the defendants, had they performed the substituted performance, could have raised it as a defense.

The procedural posture of this case fits within the *Cummings* rule. Appellant sued on the written Memorandum Agreement. Appellee responded that even if that instrument was a binding contract, the parties modified it in the course of their dealings, that appellee fully performed the agreement as modified, and that the modification was supported by consideration.[6] There remains, however, the substantive question whether the modification merely defined what would be acceptable as "substituted performance" or differed so much from the original contract that the defense was not available. *Cummings* and the other early cases did not address this question. In *Rosenfeld v. Standard Bottling & Extracts Co., supra,* the Massachusetts court took up the task. Plaintiff entered a written contract agreeing to be a travelling salesman. Defendant agreed to pay plaintiff $25 per

week plus commissions. Plaintiff sought to prove that the parties orally agreed to modify the contract, allowing plaintiff to cease travelling but to continue to receive the $25 dollars per week in return for allowing defendants to use plaintiff's formulae.

The court held that neither *Cummings* nor *Stearns* would allow the plaintiff in *Rosenfeld* to prove his revised agreement because "there is [in *Rosenfeld*] no substituted performance of the original contract, but a substituted contract. As a substituted contract it cannot support the present action, because it is not in writing and its essential features are not manifested by a memorandum in writing." 232 Mass. at 245, 122 N.E. at 300. The written and modified agreements "ha[d] nothing in common." *Id.* at 244, 122 N.E. 299. The court found that the modification attempted to replace each and every important term of the written agreement with a new term so that the two contracts are "utterly different". *Id.*

*Kirkley v. F. H. Roberts Co.,* 268 Mass. 246, 167 N.E. 289 (1929), sheds further light on the application of *Rosenfeld.* *Kirkley* involved a written agreement between the parties that made plaintiff an exclusive sales agent for defendant. Defendant tried to avoid the contract, alleging in part that subsequent dealings between the parties had modified the original contract to such an extent that it had ceased to exist. Though the court did not directly discuss the Statute of Frauds, it did distinguish *Rosenfeld* on the basis that, though later dealings did modify significant terms such as the exclusive territory, commission, and method of making sales, "the relations of the parties, in the main, were those laid down in the written contract. It could still be looked to for the determination of their respective rights. The judge could not rule, as a matter of law, that such modifications as could be found to exist were so material

---

6. Appellant now complains that there was no evidence on which the jury could find consideration to support the "unilateral" reduction of the guarantee period. The court's instruction concerning the necessary consideration, however, was that submitted by appellant who, having failed to object, cannot now argue that it should not have been given. *Stafford v. Perini Corp.,* 475 F.2d 507, 511 (1st Cir. 1973).

and so extensive that the original contract had disappeared." 268 Mass. at 252–53, 167 N.E. at 290. At some point, therefore, the parol modification becomes so extensive and significant that it is not a mere substituted performance. It becomes a new contract and that new contract must be proved by a writing. It is this test, derived from *Rosenfeld* and *Kirkley*,[7] that we will apply to facts of the case at bar.

Appellees do not rely on any oral modification of the Memorandum Agreement other than the length of the guarantee. They do not deny their status as guarantors. For the purposes of this argument they do not deny that the other terms of the agreement, as modified by subsequent written agreements, remain enforceable. In other words they say that even if the Memorandum Agreement was binding they have performed their obligations thereunder in a manner agreed to by appellants. The reduction of the guarantee period by 16 years was obviously very significant. It changed one "essential feature" of the agreement. But it did not destroy the original contract. The original contract still, "in the main", determined the relations and the respective rights of the parties. Therefore, we cannot say as a matter of law that the modifications constituted a substitute contract rather than substitute performance. It is, therefore, within the ambit of the *Cummings* rule, even though it was more than a mere alteration as to the time of plaintiff's payment. This decision does not do violence to the principles underlying the Statute of Frauds. It does not allow the appellee to prove by perjury a contract that may not have existed. *See* 2 Corbin, Contracts, § 275 at 3 (1950). It merely gives appellee a chance to show that the contract term alleged by appellant was not that to which the parties finally agreed. Appellee still faced the task of convincing the jury to accept appellee's version of the negotiations. We cannot say that the evidence, set out above, precluded a jury finding that the parties had agreed to reduce the length of the guarantee. The trial court's instructions on this point were not incorrect.

The final route by which the court's instructions permitted the jury to find for the appellee was novation:

"You may find from all the evidence that the joint venture agreement, which is in evidence, and the oral conversations between the parties on June 25, 1968 substituted Boston Holiday for Holiday Inns of America, Inc., so that all obligations of the defendant under the Memorandum Agreement have been discharged by a novation and substitution of a new debtor.

The agreement of the defendant as set forth in Section 8 of the Memorandum Agreement could not be discharged without a clear and unequivocal intent on the part of the plaintiffs to do so. In order for a novation to result, there must be acceptance of another party in full substitution of the former one.

The burden of proof is upon the defendant to show this novation by a preponderance of the evidence. You may find from all the evidence the plaintiffs assented to the novation embodied in the June 26, 1968 letter agreement by accepting payments thereunder from the defendant for four years in accordance with the terms of the agreement."

Appellant asserts as error that the trial court should have found there was no novation as a matter of law or that the court should have given certain of appellant's requested instructions.

■ Whether a novation has occurred is a question for the trier of fact. *Cf. Codman v. Beane*, 312 Mass. 570, 576, 45 N.E.2d 948 (1942) (refusing to rule as a matter of law that evidence was insufficient to sustain a finding of a novation). The defendant need not prove novation by an express consent. It is enough that a plaintiff's conduct or silence in the light of the factual circumstances was sufficient to

---

7. Although in *Rosenfeld* a plaintiff, not a defendant, sought to rely on an alleged oral modification, and in *Kirkley* the court did not expressly refer to the Statute of Frauds, we are satisfied that their teaching is applicable to the facts in this case.

find the requisite assent. *Id.* In this case there was evidence that would permit the jury to find a novation. The jury could infer that the joint venture agreement, by transferring appellee's other obligations under Section 8 of the Memorandum Agreement to the subsidiary, intended to extinguish the one obligation, the guarantee clause, that was not expressly transferred. The jury might infer that any contrary intention would have been expressed. Moreover, if the jury believed appellee's evidence concerning the telephone call of June 25 and the letter of June 26, the jury could infer that appellant would not have requested the four year guarantee unless appellant believed the twenty year guarantee had been extinguished. Such inferences are by no means compelled, but we cannot rule as a matter of law that they would not be permitted.

■ Not only do we find sufficient evidence to warrant giving the issue to the jury, but we find no error in the legal standards with which the judge charged the jury. The second paragraph of the novation charge as set out above incorporates two of appellant's requested instructions exactly. We find no law to support appellant's theory that a defendant must prove a novation by clear and convincing evidence rather than by a preponderance. Indeed, we are at a loss to see how appellant derived that principle from *Tudor Press, Inc. v. University Distributing Co.*, 292 Mass. 339, 198 N.E. 244 (1935), which does no more than allocate the burden of proof to the defendant.

■ The judge did not need to give appellant's instruction concerning consideration because, as the judge correctly noted in his definition of "novation", release of obligations under the original agreement is sufficient consideration. *Baldwin's Steel Erection Co., Inc. v. Champy Constr. Co., Inc.*, 353 Mass. 711, 715, 234 N.E.2d 763 (1968). The remaining instructions requested by appellant were in effect proposed findings of fact as to the meaning of the Memorandum Agreement and the intent of the joint venture agreement. As we pointed out at some length above, these were

questions properly submitted to the jury because the complicated course of dealings between the parties left the relationship among the various written and parol agreements in considerable ambiguity.

■ Appellant's last argument is that the trial court should have found as a matter of law that the subsidiary entered the joint venture agreement as an agent of appellee and that, therefore, appellee is liable under the joint venture agreement. We need not reach the merits of this contention because appellant did not raise it below. Appellant's relevant requested instructions refer to the agency issue as one for the jury. Counsel's only exception to the instruction was based on the erroneous belief that the judge had instructed that the jury could not find an agency relationship. As a general rule, where a party fails to object to an instruction, we will not consider that objection upon appeal. *Stafford v. Perini Corp.*, 475 F.2d 507, 511 (1st Cir. 1973). *A fortiori*, where a party requested instructions submitting an issue to the jury and failed to object to the instructions given, we will not consider an argument that it was error to give the issue to the jury.

*Because we have found no error committed by the trial court, the judgment in favor of appellee is affirmed.*