Fecteau, Francis R., J.
The Plaintiff, Citizens Bank of Massachusetts (the “Bank”), as successor-in-interest to USTrust, brings a motion for summary judgment to enforce personal guaranties given by the Defendants, Gerard T. Milligan and Barbara A. Milligan (collectively, the “Milligans”), in connection with money lent to C&M Electric, Inc. (“C&Mj. The Milligans’ cross motion for summary judgment disputes the continued viability of a sealed Guaranty signed in 1988 and the right of the Bank to seek recovery from them on account of those guaranties, given an unsealed Reaffirmation and Modification of Guaranty signed by the parties in 1990. In particular, the Milligans contend that the parties’ signatures to the Reaffirmation and Modification of Guaranty converted the guaranty given under seal to one that was not, thus reducing the statute of limitations from twenty years, and within which this suit was brought, to six years, which would make this suit untimely. Alternatively, the Milligans contend that if the suit is found to have been timely filed, the Bank should be barred from recovery for an unfair delay of fourteen years from the last recorded collection activity. The Milligans further contend that the Bank breached its implied duty of good faith and fair dealing by refusing to assist in the collection of C&M’s accounts receivables.*
For the reasons set forth below, the Bank’s motion for summary judgment is GRANTED and the Milligan’s cross motion for summary judgment DENIED.
*560 BACKGROUND
The material undisputed facts as revealed by the summary judgment record are as follows. The Milligans executed a personal “Guaranty” dated March 1, 1988 (“1988 Guaranty”), signed as a sealed instrument, for the debt of C&M in connection with an extension of a $250,000 line of credit to C&M by USTrust. The Milligans promised to “unconditionally guaranty] in accordance with the terms thereof and without any prior written notice, the payment and performance of’ any and all of C&M’s “liabilities, obligations and debts . . . now existing or hereafter arising.” The Milligans expressly waived “presentment, demand, notice, and protest with respect to the Liabilities or this Guaranty, . . . any delay on the part of the Bank, and . . . any right to require the Bank to pursue or to proceed against the Borrower or any collateral which the Bank might have been granted.”
By 1990 C&M had ceased operations. When C&M’s business failed, Louis Cintolo and Kathleen Cintolo (collectively, the “Cintolos”) were co-guarantors of C&M’s loan. Louis Cintolo negotiated with Ann Morganti of USTrust to restructure the loan to C&M as well as the guaranties the Milligans and the Cintolos had signed. In 1990, the parties executed a “Reaffirmation and Modification of Guaranty,” dated September 5, 1990 (“1990 Agreement”), which was not signed under seal. At the time of the 1990 Agreement, the principal balance due under the note was $243,192.55. This balance was divided in half between the Milligans and the Cintolos, whereby each couple were jointly and severally responsible for 50% of the principal balance, or $121,596.30.
The second paragraph of the 1990 Agreement states, in relevant part:
In order to induce the lender to continue the note in effect and to forbear from demanding full payment of same, each of the undersigned, . . . hereby . . . (b) agrees and confirms that each Guaranty remains in full force and effect with respect to the Note, the Loan Documents and the transactions described herein and that Borrower [C&M] will continue to make monthly payments of interest only on the Note, . . . and (d) agrees that the maximum portion of the Note to be guaranteed by Gerard T. Milligan and Barbara A. Milligan shall be not more than fifty (50%) percent of all outstanding principal and interest (including costs of collection and enforcement) owed Lender by Borrower.
The 1990 Agreement states further, in the third paragraph, that:
It is anticipated that the Note will be reduced through liquidation of Borrower’s accounts receivable and that each such payment made will reduce Borrower’s indebtedness to Lender and, correspondingly, will further limit the liability of each Guarantor.
The guarantors were to pay the interest payments in the event that they are not made by C&M. The 1990 Agreement was to continue for twelve months, after which discussions would be held with the Borrower to possibly convert the Note to a term obligation.
The Milligans made no payments after July 1997. A principal balance of $105,148.48 remain on the account, with accrued interest, attorneys fees and costs.
DISCUSSION
Summaiy Judgment Standard
Summary judgment shall be granted where there is no genuine issue as to any material fact and where, the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party can satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 710 (1991). The court considers the evidence presented in the light most favorable to the non-moving party. Mass.RCiv.R 56(c); Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Flynn v. City of Boston, 59 Mass.App.Ct. 490, 491 (2003). Once the moving party shows the absence of evidence to support the non-moving party’s case, the burden shifts to the non-moving party to establish specific facts showing the existence of material issues of fact. See Baldwin v. Mortimer, 403 Mass. 142, 144 (1988) (citing Godbout v. Cousins, 396 Mass. 254, 261 (1985)).
Statute of Limitations
The Milligans assert that the statute of limitations bars the Bank from bringing this suit. They argue that the parties intended the unsealed 1990 Agreement to supplant the sealed 1988 Guaranty. Therefore, the unsealed 1990 Agreement falls under the six-year statute of limitations, G.L.c. 260, §2, making the Bank’s claim untimely. The Bank contends that the unsealed 1990 Agreement did not replace but rather modified the sealed 1988 Guaranty and, therefore, the 1990 Agreement assumes the character of a sealed document and its twenty-year statute of limitations, G.L.c. 260, §1, making the Bank’s claim timely.
Massachusetts law provides that a sealed instrument can be modified by an unsealed instrument. Loring v. Whittemore, 79 Mass. 228, 232-33 (1859). See also Citizens Bank v. Milligan, Civil No. 05-0104 (Worcester Super.Ct. May 25, 2005) (Connor, J.) (19 Conn. L. Rptr. 503). This court will consider the factors in Beach v. Beach, 141 Conn. 583 (1954), on which both parties rely, to determine whether the 1990 Agreement is considered a sealed or unsealed instrument. The Connecticut Supreme Court in Beach held that whether the documents are merged as a sealed or unsealed instrument turns on the intent of the parties and whether the supplemental *561 agreement “altere[d] the nature of the [party’s] obligations.” Id. at 594.
‘To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances.” Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45-46 (1992). The Court must consider “the particular language used against the background of other indicia of the parties’ intention,” and must “construe the contact with reference to the situation of the parties when they made it and to the objects sought to be accomplished ... Not only must due weight be accorded to the immediate context but no part of the contract is to be disregarded.” Stan v. Fordham, 420 Mass. 178, 190 (1995) (citations omitted).
The principle guide to contract interpretation is, of course, the language of the contract itself. Where there is no ambiguity in contact language, it must be enforced according to its terms. Freelander v. G.K. Realty Corp., 357 Mass. 512, 516 (1970). Contract language is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). ’’When the words of a contract are clear they alone determine the meaning of the contract but, when a contact term is ambiguous, its import is ascertained from the parties’ intent as manifested by the guaranty’s terms and the circumstances surrounding its creation, such as relationship of the parties, actions of the parties and established business usages." Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 723 (1977). The course of conduct subsequent to the contract cannot contradict its terms. Specialty Trading Co. v. N.C. Erisman Co., 267 Mass. 220, 223-24 (1929); Massachusetts Mun. Wholesale Elec. Co., 411 Mass. at 48 (providing that extrinsic evidence is immaterial to discern the parties’ intent unless a written contract term is ambiguous). “[A]n ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the others.” Post v. Belmont Country Club, 60 Mass.App.Ct. 645, 652 (2004) (quoting Jefferson Ins. Co. of N.Y. v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987)). The parties’ subjective contemplations are immaterial where the contract is unambiguous. Blakely v. Pilgrim Packing Co., 4 Mass.App.Ct. 19, 24 (1976).
Modification to an agreement may constitute a substitute contract when the “modification becomes so extensive and significant that it is not a mere substitute performance . . . but becomes a new contract.” McKinley Investment v. Middleborough Land 62 Mass.App.Ct. 616, 619 (2004) (citing Johnston v. Holiday Inn, Inc., 565 F.2d 790, 796 (1st Cir. 1977)). Changes that merely modify “modes of performance” but do not “rewrite the contract,” establish a substitute performance rather than a substitute contract. Id. at 619-20 (holding that amendments including extension of time, elimination of tolling period, and changes to the contract price, although substantial, established a substitute performance rather than substituted contract). See also Kirkley v. F.H. Roberts Co., 268 Mass. 246, 252-53 (1929) (holding that although the parties to a sales employment agreement did modify significant terms such as the exclusive territory, commission, and method of making sales, “the relations of the parties, in the main, were those laid down in the [original] contract. It could still be looked to for the determination of their respective rights.”).
Contrary to the position of the Milligans, the 1990 Agreement does not change the indebtedness of C&M nor the nature of the relationship between the Lender and the guarantors and its rights under the Note and guarantees. By its plain terms, the 1988 Guaranty was confirmed, not replaced by the 1990 Agreement. The intent of the parties is clear from the plain language of the 1990 Agreement, which expressly “confirm[ed] that each Guaranty remain[ed] in full force and effect.” Where there are no ambiguities in the contract, we need not examine extrinsic evidence to look at the parties’ intent. See Massachusetts Mun. Wholesale Elec. Co., 411 Mass. at 48. Moreover, the parties adopted no language as part of the 1990 Agreement that either waived or cancelled any term of the Milligan’s unconditional Guaranty. It is well-established under Massachusetts law that the “liability of the guarantor . . . can be terminated only in accordance with the terms of the contract.” Merchants Nat’l Bank v. Stone, 296 Mass. 243, 252 (1936). Pursuant to the termination provision of the 1988 Guaranty, it may be terminated only through the receipt of a written notice of termination or “the delivery of a written notice of termination dated and signed by a duly authorized officer of the Bank, which notice of termination includes specific reference to this provision.”
In addition, the 1990 Agreement did not significantly alter the nature of the parties’ obligations. The Cintolos and the Milligans remained guarantors of the original C&M loan. The 1990 Agreement divided their liability in half and the Milligans remained jointly and severally responsible for repaying 50% of the principal balance under the terms of the 1988 Guaranty. There were no new obligations created by the 1990 Agreement.
It is clear from the contract language that the unsealed 1990 Agreement was meant to “reaffirm” and “modify” the sealed 1988 Guaranty. Hence, it is the opinion of this court that the unsealed 1990 Agreement takes on the character of a sealed instrument and its twenty-year statute of limitations. This claim was properly filed within the statute of limitations.[1]
Breach of Contract
The Bank moves for summaiyjudgment asserting that the Milligans are liable to the Bank for the obligations of C&M as a matter of law. The Bank contends that the Milligans promised to pay amounts due under the loan upon C&M’s default but failed to make payment on the principal balance of the loan in breach of their guaranty.
*562 The rights of the parties to a contract are to be determined by reference to the contract documents and, therefore, judgment for the defendant is appropriate when such documents do not give a party the right to recover. See Industrial Eng’g & Metal Fabricators, Inc. v. Fontaine Bros., 2 Mass.App.Ct. 695, 697 (1974). Aguarantor is bound by the terms of a contract guaranteed and his obligations are coextensive with those of the principal obligor. Merchants Nat'l Bank v. Stone, 296 Mass. 243, 251 (1936). The interpretation of a written contract is a question of law, and not one of fact. Lexington Insurance Co. v. All Regions Chemical Labs, Inc 419 Mass. 712, 713 (1995); Sands v. Arruda, 359 Mass. 591, 595 (1971).The interpretation ofawritten contract, as a legal question for the court, includes the determination as to what promises were made by the parties and what duties and obligations were imposed thereby. Atwood v. City of Boston, 310 Mass. 70, 75 (1941).
In addition to the law on contract interpretation stated in the section above, a contract “should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Starr, 420 Mass. at 192 (citing Shane v. Winter Hill Fed. Sav. & Loan Ass’n., 397 Mass. 479, 483 (1986)). See also McMahon v. Monarch. Life Insurance Co., 345 Mass. 261, 264 (1962). “[A] contract is not necessarily incomplete because some of its terms must be fixed at a future time or by subsequent events.’-’ Kirkley, 268 Mass. at 252 (citations omitted).
Here, the 1990 Agreement served as a forbearance agreement, by which the Bank agreed to (1) limit the exposure of the guarantors to one-half of the outstanding indebtedness (along with the Cintolos who were also to be 50% guarantors), (2) allow interest-only payments for twelve months, and (3) to apply payments from C&M’s accounts receivable to reduce the principal indebtedness. This was done at the request of the guarantors to accommodate their financial situation because C&M fell on hard economic times and ceased operations. The parties are bound by the plain terms of their contract. Hiller v. Submarine Signal Co., 325 Mass. 546, 550 (1950). In failing to discharge their obligations in accordance with the 1988 Guaranty, as modified by the 1990 Agreement, it is the opinion of the court that the Milligans breached the terms of the 1990 Agreement and the Bank has a right to recover.

Duty of Good Faith and Fair Dealing

The Milligans contend that the Bank breached its duly of good faith and fair dealing in the execution of the C&M loan and collection on the 1990 Agreement. The Milligans contend that the intent of the parties was for the 1990 Agreement to alter and limit the scope of their liability and eliminate C&M’s debt by the collection of C&M’s considerable outstanding accounts receivable. The Milligans argue that not only did the Bank refuse to assist C&M in collecting its outstanding accounts receivables but the Bank instructed C&M not to pursue collection against its largest creditor because the creditor was also a Bank customer. The Milligans argue that the Bank’s conduct destroyed the Milligans’ ability to receive the “fruits of the contract.” The Bank contends that it was under no contractual obligation to pursue C&M’s creditors or pay legal fees associated with the collection of C&Ms accounts receivables.
In Massachusetts, every contract implies a covenant of good faith and fair dealing by the parties. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). The implied covenant of good faith and fair dealing requires that neither party do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract. Id. at 471-72. The implied covenant of good faith and fair dealing may not be “invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.” UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). The purpose of the covenant is to see that the objectives of the contract be realized. Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005).
In the case at hand, the 1990 Agreement “anticipated that the Note w[ould] be reduced through liquidation of Borrower’s accounts receivable” and such payment would reduce C&M’s indebtedness to the Bank. However, the language does not provide that the Bank would participate in the collection of C&M’s accounts receivables. The Milligans’ subjective belief that the Bank would undertake such obligations would be adding to the Bank’s contractual obligations. The Milligans fully realized the benefits of the 1990 Agreement by having their liability reduced to half of C&M’s outstanding principal and interest and delaying the Bank from demanding full payment. The Bank did not “destroy” or “injure” the rights of the Milligans from receiving these benefits. The Milligans’ cross motion for summary judgment on a breach of the implied covenant of good faith and fair dealing is DENIED.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment of the Bank is GRANTED and the Cross Motion for Summary Judgment of the Milligans is DENIED.

 Editor’s Note: For an earlier opinion in this same matter presenting a preliminary discussion of this issue, see 19 Mass. L. Rptr. 503 (Connor, J.).

 The Milligans assert the applicability of the doctrine of laches. However, the court declines to apply the equitable doctrine of laches where there is a clearly applicable statute of limitations. Cf. Norton v. Chioda, 317 Mass. 446, 452 (1945); Cohen v. Bailly, 266 Mass. 39, 48 (1929) (providing that a legal right may be enforced in equity and “mere delay, provided it does not extend beyond the statute of limitations, is not a bar”).