# McKinley Investments, Inc. *vs.* Middleborough Land, LLC.

No. 03-P-625.

Suffolk. April 8, 2004. - December 3, 2004.

Present: Beck, Duffly, & Mills, JJ.

*Contract,* Sale of real estate, Modification. *Real Property,* Sale, Purchase and sale agreement. *Frauds, Statute of.*

In a civil action seeking specific performance and damages on the basis of a purchase and sale contract for land, a Superior Court judge erred in granting the defendant's motion for summary judgment, ruling that oral modifications to the contract regarding time for performance and the payment of additional money rendered the contract, as amended, unenforceable under the Statute of Frauds, where the law permits modes of performance varied by subsequent oral agreement based upon a valid consideration, and the fact of payment was not sufficient to render the oral modification invalid. [618-621]

Civil action commenced in the Superior Court Department on November 19, 2001.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment.

*Lawrence P. Murray* for the plaintiff.

*Richard A. Oetheimer (Kathryn Lundwall Alessi* with him) for the defendant.

Mills, J. McKinley Investments, Inc. (McKinley), sought specific performance and damages on the basis of a purchase and sale contract for land, as orally modified. A Superior Court judge allowed defendant Middleborough Land, LLC's (Middleborough), motion for summary judgment based upon the Statute of Frauds, after she concluded that the oral amendments that McKinley sought to enforce went "beyond a simple extension of the time for performance" and, hence, beyond the limited parameters of the *Cummings* rule and its exceptions. See *Cum-*

*mings* v. *Arnold*, 44 Mass. 486, 489-492 (1842); *Stearns* v. *Hall*, 63 Mass. 31, 35-36 (1851); *Rex Lumber Co.* v. *Acton Block Co.*, 29 Mass. App. Ct. 510, 515-516 (1990). We reverse.

*Background.*[1] McKinley contracted to buy land from Middleborough for a residential housing development. The contract, dated February 19, 2001, was designed to allow McKinley to study feasibility, to design a preliminary project plan, and to diligently seek the necessary governmental permits to build the project. The principal required permit was the comprehensive development permit pursuant to G. L. c. 40B, processed in the first instance before the local zoning board of appeals. The contract specified both specific milestone dates and variable milestone dates.

McKinley's activity was to proceed in two stages — a "due diligence" period and an "approval" period. The due diligence period was divided into two phases. During phase I, which was scheduled to last thirty days after the contract was executed, McKinley was to design its plan for the total number of units and the schedule for obtaining the necessary approvals. Phase II of the due diligence period, which was to expire thirty days after the end of phase I, permitted McKinley time for site investigation. A $10,000 deposit was paid at the execution of the contract. If McKinley chose to proceed at the conclusion of phase II, it was then to pay $90,000 as an additional deposit.

During the approval period, which began upon the expiration of the due diligence period, McKinley was to diligently seek the permits. If McKinley did not obtain the permits within twelve months, $50,000 of its deposit would become nonrefundable. The agreement also provided for a six-month tolling of the approval period to be triggered if any necessary permit were appealed.[2] The closing of the transaction was to occur thirty days after the expiration of all permit appeal periods.

[1] We view the evidence in the light most favorable to the nonmoving party. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974); *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 468 (2001).

[2] If McKinley failed to obtain the permits within eighteen months after the start of the approval period, the agreement automatically terminated. However, McKinley could extend the approval period to twenty-four months by written notice, and upon the condition that the $50,000 balance of its deposit would then become nonrefundable.

McKinley met the phase I timetable, and the parties agreed on an extension of the phase II period to June 1, 2001, at which time the $90,000 balance of the deposit was scheduled to be paid. It was not paid, but on June 6, 2001, McKinley requested (in writing) a twelve-month extension to the outside approval period (i.e., the permit approval period ending thirty days prior to closing), with a proposal that $12,500 be added to the purchase price for each three-month period of any such extension.

The parties met on June 19, 2001, to discuss McKinley's proposed extension and payment, but no agreement was reached. Eight days later, McKinley's lawyer sent to Middleborough a proposed written amendment to the agreement, which set forth the material terms of the June 6th proposal, with an additional provision: that the one-year extension be conditioned upon receipt of a decision on the "comprehensive permit" (whether an approval or denial) from the local zoning board of appeals within the original approval period. The parties next met on August 16, 2001, and discussion continued on the potential extension of the approval period, the amount and timing of payments in connection with any possible extension, and modification of the appeal period. McKinley also introduced several entirely new items to the parties' discussion.

McKinley's representative, Alexander A. Mitchell, testified that the August 16 meeting was "a real collaborative effort" and "[w]hat was ultimately resolved was, as opposed to granting an additional twelve-month extension on top of the initial eighteen-month approval period, the subsequent six-month extension and the possible six-month tolling period, we were going to get rid of the tolling period and replace that with a twelve-month extension . . . . We were going to pay for that extension by paying $17,500.00 per quarter." He further testified that, at the conclusion of the meeting, "[W]e were in agreement on the amendment, that that was to be drafted . . .[;] we were going to continue to proceed with our development efforts and [the actual drafting of the amendment] wasn't going to slow anything up. We were both in agreement on that." A writing was never executed.

*Discussion.* The judge noted that the modifications pressed

by McKinley reflected changes including extension of time, elimination of the tolling period, and additions to the contract price. She ruled that these three modifications "affect[ed] substantive aspects of the Agreement that are independent of the time for performance . . . [and] taken together . . . appear to represent material changes that would essentially rewrite much of the Agreement." Middleborough asserts that there were two additional modifications, in addition to the three specified by the judge: (a) extension of the due diligence period and (b) extension of the time for payment of the additional $90,000 deposit. McKinley argues that the "only modification . . . which the parties sought . . . was the time for the performance."

We hold that the judge was correct in characterizing the modifications, as pressed by McKinley, as affecting time, tolling, and price. However, the changes did not rewrite the contract. Their effect was to establish a substitute performance, rather than a substitute contract. See *Johnston* v. *Holiday Inns, Inc.*, 565 F.2d 790, 796 (1st Cir. 1977) (after review of Massachusetts cases, concluding that the test is whether "the parol modification becomes so extensive and significant that it is not a mere substituted performance," but rather "[i]t becomes a new contract and that new contract must be proved by a writing"). Compare *Rosenfeld* v. *Standard Bottling & Extracts Co.*, 232 Mass. 239, 244-245 (1919) (finding substituted contract, rather than substituted performance, where modified agreement had "nothing in common" with original agreement and obligations of plaintiff were "utterly different"). The decision was also incorrect to restrict allowable modifications solely to those "simply extend[ing] the time of performance," despite McKinley's claim that the modifications all boiled down to an extension of *time for performance.* Here, McKinley's performance obligations and conditions were, in part, moveable, dependent upon due diligence, and not simply a fixed closing date. The timing and mode of performance were rather typical of a modern Massachusetts land transaction that requires, for accomplishment, governmental permits. At first blush, the bulk of the text defining the performance requirements suggests such complexity that any modification would be other than simple.

However, upon closer examination, the identified modifications are, as matter of law, most fairly described as "mode[s] of performance . . . varied by a subsequent oral agreement based upon a valid consideration," which our cases have permitted. *Cambridgeport Sav. Bank* v. *Boersner*, 413 Mass. 432, 439 (1992), quoting from *Siegel* v. *Knott*, 316 Mass. 526, 528 (1944).

While it is true that the court in *Rex Lumber Co.* v. *Acton Block Co.*, 29 Mass. App. Ct. at 515-516, spoke of a line of cases instructing that a plaintiff may enforce a contract which has been modified by an oral agreement to extend the time for performance, several cases cited by the court did not limit the possibility of oral modification only to time for performance. The *Rex* court cited *Moskow* v. *Burke*, 255 Mass. 563, 567 (1926) ("[t]he parties could at any time before breach orally modify the time *and manner of performance* fixed by the contract" [emphasis supplied]); *Siegel* v. *Knott*, 316 Mass. at 528 (the oral agreement "changed the *method* by which the plaintiffs had undertaken to pay their mortgage indebtedness" [emphasis supplied]); *Wesley* v. *Marsman*, 393 Mass. 1003, 1004 (1984) (the parties had "orally modified the terms of the original agreement concerning the *return of the deposit*" [emphasis supplied]).

In this case the modifications regard both the time for performance (the twelve-month extension and the substitution of a definite time period for a tolling period) and the payment of additional money. While the payment appears to us, in the circumstances, as consideration for the contract modification, we do not consider it relevant on summary judgment that the parties contest whether the additional payment is consideration or an increase in the sale price. In either case, the fact of payment is not sufficient to render the oral modification invalid. We hold that it was error for the judge to have ruled that the identified modifications rendered the contract, as amended, unenforceable. Summary judgment was improperly granted.

We do not address other questions, including that of waiver of deposit. The plaintiff may have several other proof and credibility problems in seeking the requested relief. We hold, however, that the Statute of Frauds did not, as matter of law,

render this contract unenforceable, as the modifications were not required to be in writing.

*Judgment reversed.*