WENDY VASCONCELLOS *vs.* ARBELLA MUTUAL INSURANCE COMPANY.

No. 05-P-1493.

Barnstable. June 12, 2006. - September 6, 2006.

Present: GREEN, DREBEN, & GRAINGER, JJ.

*Insurance,* Motor vehicle insurance, Motor vehicle personal injury protection benefits. *Contract,* Performance and breach, Settlement agreement.

This court concluded that the defendant motor vehicle insurer committed a breach of a binding oral contract it had entered into with the plaintiff, to whom it had issued a standard Massachusetts automobile policy, to settle her property damage claim following a motor vehicle accident [280-283], but that the defendant did not act unreasonably or engage in undue delay in contravention of G. L. c. 93A [283].

CIVIL ACTION commenced in the Barnstable Division of the District Court Department on September 17, 2002.

The case was heard by *W. James O'Neill,* J., on motions for summary judgment.

*Lee M. Berger* for the plaintiff.

*Joseph F. Cavanaugh, III,* for the defendant.

GRAINGER, J. The plaintiff, Wendy Vasconcellos, appeals from a decision of the Appellate Division of the District Court Department in favor of her insurer, the defendant Arbella Mutual Insurance Company (Arbella), on four counts of contract claims and two counts of G. L. c. 93A claims. The underlying action arose from a motor vehicle accident on August 25, 2001, which hospitalized Vasconcellos and rendered her 1991 Ford Tempo automobile a total loss. Because we conclude that Arbella entered into a binding oral contract to settle Vasconcellos's property damage claim, we reverse as to count I of the complaint.[1] Because we

---

[1] We need not reach counts II through IV of the complaint, which concern the enforceability of the property damage coverage in the insurance contract,

conclude that Arbella did not act unreasonably or engage in undue delay, we affirm the decision below as to counts V and VI.

*Background.* We summarize the relevant factual and procedural history as follows. Arbella issued a standard Massachusetts automobile policy to Vasconcellos. The policy, which included collision coverage and personal injury protection (PIP), designated Vasconcellos's 1989 Ford Escort LX automobile as the "described auto." The policy also provided collision coverage regardless of fault for any vehicle meeting the policy's definition of "your auto." "Your auto" is defined as:

> "A. The vehicle or vehicles described on the Coverage Selections Page.

> "B. Any auto while used as a temporary substitute for the described auto while that auto is out of normal use because of a breakdown, repair, servicing, loss or destruction. But the term 'your auto' does not include a substitute vehicle owned by you or your spouse.

> "C. A private passenger auto, trailer, motorcycle, pick-up truck, van or similar vehicle, to which you take title or lease as a permanent replacement for a described auto or as an additional auto. We provide coverage for an additional auto only if you ask us to insure it within seven days after you take title or the effective date of the lease."

After the engine of her Escort seized, Vasconcellos purchased a 1991 Ford Tempo from Elizabeth Doherty on or about August 20 or 21, 2001. Vasconcellos physically transferred the registration number plate from the inoperable Escort to the Tempo, but she did not transfer the registration from the Escort to the Tempo at the Registry of Motor Vehicles. On August 25, 2001, only four or five days later (but within the seven-day grace period), Vasconcellos was involved in a motor vehicle accident with the newly purchased Tempo. As a result, the Tempo was "totaled" and Vasconcellos was hospitalized for more than ten days. On August 27, 2001, Vasconcellos, by her attorney, contacted Arbella making an insurance claim for property damage to the

because we conclude that the parties made a binding agreement to settle the property damage claim.

Tempo and for her personal injuries. Vasconcellos's attorney advised Arbella to send an appraiser to view the Tempo as soon as possible.

*Property damage claim.* On September 24, 2001, Vasconcellos's attorney provided Arbella's adjuster, Jeffrey White, a copy of the bill of sale for the Tempo. On October 11, 2001, Vasconcellos's attorney provided White a notarized affidavit signed by Elizabeth Doherty, confirming the fact of the sale of the Tempo to Vasconcellos. On October 29, 2001, Vasconcellos's attorney accepted an oral offer from White in the amount of $2,100 for the property damage to the Tempo. On October 30, 2001, Vasconcellos's attorney sent a letter to White confirming the acceptance of Arbella's offer. After a further conversation between Vasconcellos's attorney and White, and because Vasconcellos could not locate the certificate of title for the Tempo, Vasconcellos's attorney also prepared an application for a duplicate certificate of title, which was sent to the Registry of Motor Vehicles with a check in the amount of twenty-five dollars. Thereafter, the duplicate certificate of title was sent directly to Arbella by the Registry of Motor Vehicles. In late December, 2001, or early January, 2002, at or about the time that the duplicate certificate of title was sent to Arbella, White left Arbella's employ.

Shortly thereafter, Vasconcellos's attorney was informed orally of White's departure by another Arbella employee, Patricia Ray, who also stated that Arbella might, in fact, deny the property damage claim. Thereafter, by letter of February 28, 2002, Arbella denied Vasconcellos's property damage claim.

*PIP claim.* On August 27, 2001, Arbella requested a statement from Vasconcellos describing the accident. On November 6, 2001, Vasconcellos, by her attorney, sent to White by facsimile and mail the PIP application and medical bills in the amount of $19,493.67, requesting that Arbella pay the full $8,000 in PIP coverage. On February 11, 2002, Vasconcellos provided the statement that Arbella had requested the preceding August. Approximately two weeks thereafter, Arbella issued a PIP benefits check in the amount of $8,000 made payable to one of the medical providers that treated Vasconcellos following her accident. Vasconcellos's attorney demanded that the check be reissued to Vasconcellos, or to Vasconcellos and her attorney

jointly. Arbella thereupon requested a "hold harmless letter" from Vasconcellos's attorney, which it received on March 13, 2002. Arbella then immediately reissued the check in the amount of $8,000 to Vasconcellos and her attorney.

*Proceedings below.* On March 15, 2002, Vasconcellos, by her attorney, sent a G. L. c. 93A demand letter to Arbella, demanding relief from allegedly unfair or deceptive acts or practices. After Arbella failed to tender any offer within thirty days of receipt of the demand letter, Vasconcellos sued Arbella in District Court. On cross motions for summary judgment, a District Court judge allowed Vasconcellos's motion for summary judgment as to count II (breach of an insurance contract) and denied the motion as to all other counts. The judge also denied Arbella's cross motion for summary judgment. Both parties appealed to the Appellate Division of the District Court. The Appellate Division reversed, and ordered judgment as to all counts for Arbella. This appeal ensued.

*Discussion.* 1. *Property damage claim.* Because we conclude that Arbella committed a breach of an oral contract to settle Vasconcellos's property damage claim for $2,100, we do not reach the other issues presented by the parties with respect to that claim.[2]

An oral contract, like any other, requires an offer, acceptance, and consideration. See *Haverhill* v. *George Brox, Inc.,* 47 Mass. App. Ct. 717, 720 (1999). The evidence is uncontroverted that Arbella's representative made the offer on October 29, 2001, and that Vasconcellos's attorney promptly signified acceptance in the same telephone conversation. While the terms of an oral contract may be established entirely through testimony, see *Gleason* v. *Mann,* 312 Mass. 420, 423 (1942), in this case a written memorandum — a letter — was mailed the following day. Vasconcellos then paid twenty-five dollars to the Registry of Motor Vehicles to obtain a duplicate certificate of title, and delivered the title and the Tempo to Arbella. These facts were admitted during deposition cross-examination by White, the

[2]These issues include whether Vasconcellos requested coverage of the Tempo within seven days of taking title as required by the policy, whether the Tempo qualified as a "substitute" vehicle or a "temporary replacement" under the policy, and whether the registration was properly transferred from the Escort to the Tempo pursuant to G. L. c. 175, § 113A, and G. L. c. 90, § 2.

adjuster who first handled the claim, and are not disputed by Arbella. The Appellate Division also referred in its decision to the fact that "an offer of settlement was made, accepted and later withdrawn."

Arbella, however, asserts that the oral contract was voidable on several grounds: (1) there was no "meeting of the minds" between the parties as a result of a mutual mistake relating to an essential element of the agreement; (2) Vasconcellos made fraudulent misrepresentations which induced Arbella to make the settlement offer; and (3) Vasconcellos is unable to demonstrate any reliance on the settlement to her detriment necessary for Arbella to be estopped from denying coverage. We address these in turn.

Arbella argues that the parties did not have a meeting of the minds because the offer was implicitly conditioned on the existence of coverage. There is no evidence in the record to support the reservation of any condition or contingency in connection with Arbella's offer. By its very nature, an offer to settle a claim is a proposal to abandon defenses to payment, absent explicit language to the contrary wholly lacking here. The only "mistake" reflected by the record was not one of fact, but rather the implicit assumption by Arbella's agent that Vasconcellos was contractually entitled to coverage for her claim.[3] Arbella's reference to *LaFleur* v. *C.C. Pierce Co.*, 398 Mass. 254, 258 (1986), is of no avail; in that case the parties were litigating the applicability of a release to a personal injury, the existence of which was unknown at the time the release was executed.

Arbella's allegation of fraud is based entirely on the fact that Vasconcellos submitted a claim. Under Arbella's theory, the submission of the claim constituted a fraudulent misrepresentation that the vehicle operated by Vasconcellos was covered by a policy issued by Arbella. This allegation fails to meet the essential element of a claim for fraudulent misrepresentation,

[3]Even in circumstances where an insurer's mistake as to coverage has been held sufficient to avoid a settlement agreement, such avoidance would not have been available if the "insurer's mistake was due wholly to its own lack of care and failure to exercise reasonable diligence." *Singer* v. *St. Paul Mercury Ins. Co.*, 478 S.W.2d 579, 582 (Tex. Civ. Ct. App. 1972). Arbella's prompt effort to retract the offer as soon as another adjuster was assigned to the file reflects that Arbella's mistake falls into this category.

namely a misrepresentation of fact. Submission of an insurance claim is simply an assertion of a legal right pursuant to a contract. While such an assertion may imply that there are facts which justify the claim, or at least an absence of facts that are incompatible, see *McEneaney* v *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 575 (1995), claims are submitted for the purpose of ensuring that they are reviewed rather than rejected for failure to provide notice. They are not reasonably understood or characterized as factual except to the extent that they assert the occurrence of a loss or damage. Arbella offers no support for the novel theory that a policyholder's submission of a claim is a misrepresentation of fact as to coverage on which an insurer can be expected to rely to its detriment simply by issuing payment.

The final argument, that Vasconcellos did not rely to her detriment on Arbella's offer, also fails. The settlement agreement was, in and of itself, an enforceable contract. Vasconcellos agreed not to pursue her claim and Arbella agreed to make a payment. "A party who abandons a claim made in good faith in order to settle a dispute over that claim provides sufficient consideration to support the settlement agreement even though the claim ultimately might have been unsuccessful." *Pandiscio* v. *Atkinson*, 54 Mass. App. Ct. 482, 486 (2002).[4] We also note, as stated above, that in furtherance of the settlement, Vasconcellos secured a replacement certificate of title from the Registry of Motor Vehicles and transferred title to Arbella. Arbella dismisses the twenty-five dollar fee for the replacement certificate of title as insufficient to establish detrimental reliance on the settlement offer. However, we are concerned here not with promissory estoppel, but with consideration for a fully formed contract. See 4 Williston, Contracts § 8:8, at 176 (4th ed. 1992) ("either consideration or estoppel based on reliance" is required for party to surrender defense). While, as stated above, additional consideration is unnecessary in this context,

[4]The decision of the Appellate Division described the agreement as involving accord and satisfaction, relying on *McFaden* v. *Nordblom*, 307 Mass. 574, 576 (1940). That case involved an agreement that a claim would not be discharged until all in a series of payments had been made. There, unlike here, "the parties relied not upon the agreement alone but upon its performance." *Id.* at 576.

the payment of a fee, albeit small, does qualify. "The law is not concerned with the adequacy of the consideration, as long as it is 'valuable.' " *V. & F.W. Filoon Co.* v. *Whittaker Corp.*, 12 Mass. App. Ct. 932, 933 (1981), quoting from *Barnett* v. *Rosen*, 235 Mass. 244, 249 (1920).

2. *PIP claim.* The record does not support Vasconcellos's assertions of undue delay and unfair claim settlement practices by Arbella. Pursuant to G. L. c. 90, § 34M, Arbella was entitled to a written statement, medical reports, and other information, *Figuereo* v. *Valverde*, 60 Mass. App. Ct. 76, 78 (2003), all of which it requested from Vasconcellos. These items were not produced in their entirety until more than six months after they were requested. Thereafter, Arbella promptly produced a check for the full amount of PIP coverage, $8,000, payable to one of Vasconcellos's medical providers. Vasconcellos's attorney returned the check, requesting payment directly to Vasconcellos or jointly to Vasconcellos and her attorney. Arbella reasonably requested a "hold harmless" letter, which was produced two weeks later, whereupon Arbella reissued the PIP benefits check in full. In contrast to its attempted repudiation of the settlement of the collision claim, Arbella acted properly in all respects, and well within the requirements of G. L. c. 176D, § 3(9), and the limits established by case law. *Lorenzo-Martinez* v. *Safety Ins. Co.*, 58 Mass. App. Ct. 359, 365-366 (2003) (prompt initiation of investigation by one insurer contrasted with thirteen-month delay by another).

*Conclusion.* For the reasons set forth above, so much of the decision and order of the Appellate Division of the District Court Department that orders entry of judgment for Arbella as to counts I-IV is reversed. Judgment is to enter for Vasconcellos as to count I. Since counts II-IV have been rendered moot by our disposition of count I, judgment of dismissal is to enter as to those counts. In all other respects, the decision and order of the Appellate Division is affirmed.

*So ordered.*