NEYMAN, J.
In this case, we consider whether a contract was modified by the parties, and whether the defendants are entitled to attorney's fees under a "prevailing party" provision of the contract. The plaintiff, Sea Breeze Estates, LLC (Sea Breeze) brought an action for breach of a purchase and sale contract (contract) in the Superior Court, alleging that the defendants terminated the contract without justification.[3] The defendants, John Jarema and Alexander Bove, acting as trustees of the Jarema Family Trust (collectively, the trustees), filed various counterclaims alleging, among *358 other things, that Sea Breeze breached the contract before termination by failing to make required monthly payments. In response to the trustees' motion for summary judgment, Sea Breeze contended that, prior to its cessation of monthly payments, the parties modified the contract and the trustees breached it as modified. A Superior Court judge disagreed and allowed, in part, the trustees' motion for summary judgment. Pursuant to § 18.10 of the contract, the judge also allowed the trustees' motion for attorney's fees and costs as the "prevailing party." We affirm.
Background. 1. The contract. In June of 2004, the parties entered into a contract for the sale of property at 187 Atlantic Street in Gloucester (property). Sea Breeze's goal was to develop a multifamily residential community on the property. Pursuant to § 2.1 of the contract, Sea Breeze agreed to purchase the property for $3,735,000 "presum[ing] and anticipat[ing]" that it would have the "opportunity for development of 44 units," and stipulating that, if it received approval to build more than forty-four units, it would pay the trustees $85,000 for each additional unit. A related provision, § 2.3(k), established that, even if Sea Breeze received approval to build fewer than forty-four units, it still "maintain[ed] the right to elect to purchase the property for the full purchase price."
Section 2.2(b) of the contract required Sea Breeze to pay the trustees $2,000 per month for a period of twenty-four months, "representing the time period anticipated for [Sea Breeze] to obtain the necessary Approvals"[4] for the project. In the event that Sea Breeze did not obtain the necessary approvals within that allotted "Approval Period," § 2.2(c) authorized an "Extension Period"[5] during which Sea Breeze could continue to make $2,000 monthly payments as separate consideration to keep the contract in effect. Whereas payments made during the approval period would be credited toward the final purchase price, any "Extension Payments" would not.
Two additional provisions of the contract are relevant to this case. Section 18.2 contains a so-called "merger" or "integration"[6] clause, which states, inter alia, that the contract "represents the entire understanding of the parties," merges "[a]ll prior negotiations" into the written agreement, and "may only be amended by a writing executed by the parties." Section 18.10, captioned "Counsel Fees," entitles the "prevailing party" to recover reasonable counsel fees and costs stemming from "any litigation regarding the rights and obligations of the parties under this [c]ontract."
2. The extension period and modification proposals. Sea Breeze was unable to obtain the necessary permits and approvals within *359 the twenty-four-month approval period, which ended in June of 2006. However, Sea Breeze continued to make the $2,000 monthly extension payments. On December 3, 2008, Michael Larkin, on behalf of Sea Breeze, wrote a letter to Bove informing him that its engineer had determined "that the property ha[d] a limited development opportunity of thirty-three (33) units," which, at $85,000 per unit, would result in a total purchase price of $2,805,000. The letter concluded by asking Bove to "respond so that this matter can be resolved." The parties communicated without progress over the next three-plus years.
On January 31, 2012, Patrick Larkin, a manager of Sea Breeze and brother of Michael Larkin,[7] sent an electronic mail message (e-mail) to Jarema stating, "I spoke with you last week regarding your conversation with Atty. Bove. You indicated that we were all on the same page to move forward. When will we have something in writing from Atty. Bove[?]" Jarema responded to Larkin's January 31 e-mail with another e-mail stating, in relevant part, "It should be very shortly as I am scheduled to talk or see him this week." On February 1, 2012, Bove and Jarema discussed the proposed terms contained in Michael's December 3, 2008, letter. The next day, Bove sent a letter to Jarema (the Bove letter) stating that he was "willing to agree to a reduction to a total purchase price of $2,550,000" based upon thirty units at $85,000 per unit, subject to two specified conditions. First, the purchase price would "increase by $85,000 for each additional unit above thirty units." Second, the monthly extension payments would "increase from $2,000 a month to $3,000 a month, effective for the month following signing of the Addendum to the [contract]." On or about February 23, 2012, Jarema provided a copy of the Bove letter to Patrick.[8] That same day, Patrick sent an e-mail to Jarema in which he stated, in pertinent part, "John, [w]e got your letter from Atty. Bove. ... Can we set up a meeting with all parties to finalize the adden[d]um to the P&S?" No meeting materialized, and in March of 2012, Sea Breeze, through Patrick, sent an e-mail to Jarema proposing four "options" for the trustees to "review to determine the next step forward with the project." None of the options included the terms delineated in the Bove letter. The e-mail concluded with the following sentence: "We are requesting a meeting with all parties so that these may be discussed and an option can be agreed upon by all parties." The parties never agreed upon any option.
3. Cessation of extension payments. In April of 2012, Sea Breeze stopped making monthly extension payments.[9] On August 7, 2012, Sea Breeze demanded that the trustees sign an amendment to the contract in accordance with the terms of the Bove letter. The trustees declined. On August 16, 2012, Bove advised Sea Breeze in writing that the contract "has been terminated in all respects." On August 28, 2012, Sea Breeze responded to Bove and denied that the contract and the "obligations therein" were "extinct."
4. The litigation. Sea Breeze commenced this action against the trustees in August of 2014, alleging breach of contract, violation *360 of the covenant of good faith and fair dealing, and seeking specific performance and an accounting. The trustees filed counterclaims alleging breach of contract, slander of title, interference with advantageous relations, violation of G. L. c. 93A, violation of the implied covenant of good faith and fair dealing, and seeking a declaratory judgment that the contract was no longer in effect.
Following a hearing on the parties' cross motions for summary judgment, the judge allowed the trustees' motion as to (a) their counterclaims for breach of contract and declaratory judgment, and (b) all of Sea Breeze's claims, but awarded no damages thereon.[10] The judge also allowed Sea Breeze's motion as to the trustees' counterclaims for slander of title and violation of c. 93A.[11] Sea Breeze filed a motion for reconsideration, which the judge denied.
Thereafter, the parties filed cross motions for attorney's fees and costs. In a written memorandum and order, the judge awarded the trustees $70,000 in attorney's fees (out of $111,802 they had requested) and $12,126 in costs pursuant to the prevailing party provision at § 18.10 of the contract. Sea Breeze's appeal ensued.
Discussion. Sea Breeze contends that the judge erred in granting the trustees' motion for summary judgment as to the claims and counterclaims related to breach of contract. Specifically, it asserts that (1) the contract was amended as a result of the Bove letter and related communications; (2) even if the parties did not amend the contract in writing, their conduct demonstrated that they had orally agreed to modify the contract; and (3) the trustees breached the contract as modified, and thus were not entitled to summary judgment.
We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law." Casseus v. Eastern Bus Co., 478 Mass. 786, 792, 89 N.E.3d 1184 (2018) (quotation omitted). "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6, 887 N.E.2d 244 (2008). If the moving party carries its burden, "the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact." French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660, 948 N.E.2d 1244 (2011).
We begin by reviewing fundamental principles of contract law relevant to the transaction at issue. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 454, 817 N.E.2d 799 (2004), quoting from Restatement (Second) of Contracts § 1 (1981). "Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." I & R Mechanical, Inc., supra at 454-455, 817 N.E.2d 799. This manifestation of mutual assent, otherwise known as a "meeting of the minds," occurs when there is "an offer by one [party]" and an "acceptance of it by the other."
*361 Id. at 455, 817 N.E.2d 799. "[A]n offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 383, 805 N.E.2d 957 (2004) (quotation omitted). Acceptance exists where the offeree assents to the offer "in the terms in which it is made." Moss v. Old Colony Trust Co., 246 Mass. 139, 148, 140 N.E. 803 (1923). See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878, 724 N.E.2d 699 (2000) ("[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract"). "[A] conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition." Moss, supra at 148, 140 N.E. 803. With these principles in mind, it is axiomatic that "[e]xpectations and negotiations fall far short of a binding agreement." Brighton Packing Co. v. Butchers' Slaughtering & Melting Ass'n, 211 Mass. 398, 405, 97 N.E. 780 (1912).
1. Written modification. The written communications between the parties did not constitute a modification of the contract. See Blomendale v. Imbrescia, 25 Mass. App. Ct. 144, 147, 516 N.E.2d 177 (1987). As discussed infra, the parties never formally "executed" a "writing" as required by both § 18.2 of the contract and by the Statute of Frauds, G. L. c. 259, § 1. Moreover, their correspondence demonstrates that they failed to reach a "meeting of the minds" as to the material terms of a modification. See Situation Mgt. Sys., Inc., supra at 878, 724 N.E.2d 699. Although the December 3, 2008, letter from Sea Breeze to the trustees may have constituted an offer, see Uno Restaurants, Inc., 441 Mass. at 383, 805 N.E.2d 957, the Bove letter rejected that offer by introducing two new conditions -- a per unit increase in purchase price on each additional unit above thirty units, and a fifty per cent increase in the monthly extension payments. See Moss, supra at 148, 140 N.E. 803 ; Massachusetts Hous. Fin. Agency v. Whitney House Assocs., 37 Mass. App. Ct. 238, 241, 638 N.E.2d 1378 (1994) ("A substantial variation in contract terms incident to a purported acceptance is not a binding acceptance but a counter offer"). There is no ambiguity in the Bove letter; nor does Sea Breeze argue that there are any facts in the summary judgment record evincing any ambiguity as to the manner in which the content of the Bove letter was conveyed to Sea Breeze.
Likewise, Patrick's February 23, 2012, e-mail neither "manifested assent" to the conditions stated in the Bove letter, nor even acknowledged them. Furthermore, Patrick's March, 2012, e-mail rejected the Bove letter's terms by proposing four alternative "options." See Moss, supra at 148, 140 N.E. 803. There is no written evidence that the trustees ever responded to the March, 2012, e-mail, let alone that they agreed to any of its suggestions. As a result, the parties' written communications represented nothing more than "negotiations toward carrying ... out" a proposed modification, not a binding agreement. Brighton Packing Co., 211 Mass. at 405, 97 N.E. 780. Accordingly, the judge did not err in allowing partial summary judgment as to the claims predicated on the written communications. See Situation Mgt. Sys., Inc., 430 Mass. at 879, 724 N.E.2d 699 (although the question whether a contract has been made is usually one of fact, where the evidence consists only of writings or is uncontradicted, it is a question of law).
2. Oral modification. Recognizing the insufficiency of the written communications *362 as an enforceable modification, Sea Breeze contends that it raised a genuine issue of material fact as to whether the parties orally agreed to modify the contract. The argument is unavailing.
The oral modification claim faces two preliminary hurdles. First, the Statute of Frauds bars suit "[u]pon a contract for the sale of lands ... or of any interest in or concerning them ... [u]nless the promise, contract or agreement ... is in writing and signed by the party to be charged therewith." G. L. c. 259, § 1. Second, § 18.2 of the contract provides that it "may only be amended by a writing executed by the parties hereto." Sea Breeze disputes neither the application of the Statute of Frauds to the present case, see Restatement (Second) of Contracts §§ 125, 127 (1981), nor the existence of the merger clause and provision requiring any modification to be in writing. Rather, it contends that Massachusetts case law authorizes oral modifications to contracts, even in the face of such obstacles.
We agree that Massachusetts case law has recognized limited factual circumstances in which an agreement may be orally modified in the face of the Statute of Frauds. See McKinley Invs., Inc. v. Middleborough Land, LLC, 62 Mass. App. Ct. 616, 620, 818 N.E.2d 627 (2004). Likewise, our case law delineates narrow exceptions in which an oral modification may survive despite a provision that an agreement may only be amended by a writing. See, e.g., Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 439, 597 N.E.2d 1017 (1992). Further, an agreement to modify a contract may be express, or may be inferred from the attendant circumstances and conduct of the parties. See ibr.US_Case_Law.Schema.Case_Body:v1">id. That notwithstanding, a party asserting that an oral modification occurred must present evidence that the parties reached an agreement as to its terms. See Vasconcellos v. Arbella Mut. Ins. Co., 67 Mass. App. Ct. 277, 280, 853 N.E.2d 571 (2006) ("An oral contract, like any other, requires an offer, acceptance, and consideration").
The present case does not fall within any of the limited exceptions referenced above. Sea Breeze has presented no evidence that the parties expressly agreed to the "material terms" of a modification, see Situation Mgt. Sys., Inc., 430 Mass. at 878, 724 N.E.2d 699, and no such agreement can be inferred from the circumstances. See Cambridgeport Sav. Bank, supra at 439 n.10, 597 N.E.2d 1017 ("The evidence of a subsequent oral modification must be of sufficient force to overcome the presumption that the integrated and complete agreement, which requires written consent to modification, expresses the intent of the parties"); Wells Fargo Bus. Credit v. Environamics Corp., 77 Mass. App. Ct. 812, 817, 934 N.E.2d 283 (2010) (where a merger clause exists, "the parol evidence must be of sufficient strength to present an ambiguity between the actual conduct of the parties and the contract").
Regarding an express agreement, Sea Breeze has not identified any communication, testimony, or exhibit in the record demonstrating that the parties expressly agreed to any identified terms, let alone "material" terms. See id. ("[A]mbiguity cannot be predicated solely on statements in affidavits" [citation omitted] ). Contrast Moskow v. Burke, 255 Mass. 563, 566-567, 152 N.E. 321 (1926) (holding that "the jury could have found upon the testimony of the plaintiff" that the asserted oral modification had occurred); Dennis v. Kaskel, 79 Mass. App. Ct. 736, 741, 950 N.E.2d 68 (2011) (finding a dispute of material fact where deposition testimony differed as to whether there was a specific agreement).
Similarly, the conduct of the parties and attendant circumstances here do not support an inference that the parties agreed, *363 or even intended to agree, to modify the contract. See Cambridgeport Sav. Bank, supra at 439 n.10, 597 N.E.2d 1017. To the contrary, the evidence reflects that Sea Breeze, at every turn, pushed for the parties to meet so that they could reach an agreement as to the terms of a written addendum. Far from being of "sufficient force to overcome the presumption that the integrated and complete agreement ... expresses the intent of the parties," id., the evidence in this case supports rather than negates that presumption. We have scoured the summary judgment record and detect no support for Sea Breeze's claims that the parties agreed to the material terms of a modification or that they waived the requirement of a writing itself. Contrast Madden v. Estin, 28 Mass. App. Ct. 392, 395, 551 N.E.2d 550 (1990). Thus, Sea Breeze cannot prove that the trustees breached the contract prior to April, 2012, and summary judgment was properly granted in the trustees' favor.
3. Attorney's fees. Sea Breeze also challenges the judge's award of attorney's fees to the trustees. Attorney's fees "as between opposing parties in litigation" are only allowed in "limited instances," including "pursuant to a valid contractual provision." Bournewood Hosp., Inc. v. Massachusetts Comm'n Against Discrimination, 371 Mass. 303, 311-312, 358 N.E.2d 235 (1976). As with the analysis of any contract provision, "[t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116, 546 N.E.2d 888 (1989).
In the present case, § 18.10 of the contract provides as follows:
"Counsel Fees. In the event of any litigation regarding the rights and obligations of the parties under this [c]ontract, the prevailing party shall be entitled to recover reasonable counsel fees, court costs and other direct litigation expenses."
Sea Breeze claims that the judge erred in awarding fees to the trustees under this provision because the judge allowed the trustees' summary judgment motions only in part, and also allowed Sea Breeze's summary judgment motions in part, which resulted in the dismissal of several of the trustees' counterclaims. Sea Breeze contends that this "split decision" compels a determination that neither party prevailed within the meaning of the contract. See Browning-Ferris Indus., Inc. v. Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 315, 945 N.E.2d 964 (2011) ("split decision" in litigation produced divided outcome, precluding either side from status of "prevailing party"). We disagree.
Although the court ruled in Sea Breeze's favor as to three of the trustees' counterclaims, the litigation did not end in a "divided outcome" within the meaning of our precedent. Contrast Browning-Ferris Indus., Inc., supra. The gravamen of the present case was (a) whether the contract was subject to an oral modification, and (b) which party breached it. The dispute over these issues constituted "litigation regarding the rights and obligations of the parties under this [c]ontract" within the meaning of § 18.10. Compare Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 828, 434 N.E.2d 611 (1982) (noting that attorney's fees provision applied "only to such fees and expenses ... incurred by either party as a result of actions or proceedings brought for the purpose of determining or enforcing either party's rights under the contract" [emphasis omitted] ). The trustees prevailed on their positions as to both of these issues. Furthermore, the record supports the *364 trustees' argument that "the claims on which Sea Breeze prevailed on summary judgment constitute only a small portion of this case and a significantly lesser percentage of the time billed and fees incurred than those claims on which the [trustees] prevailed." See Waxman v. Waxman, 84 Mass. App. Ct. 314, 326-327, 995 N.E.2d 1138 (2013) (affirming award of costs to party prevailing on "most complex and valuable claim"). Under these circumstances, the judge did not err in awarding attorney's fees and costs to the trustees under § 18.10 of the contract.[12]
We also disagree with Sea Breeze's contention that an alleged conflict between § 8.3 of the contract and the counsel fee provision in § 18.10 precludes an award of attorney's fees. In contrast to § 18.10 -- which addresses "litigation regarding the rights and obligations of the parties under this [c]ontract" and mandates that "the prevailing party shall be entitled to recover reasonable counsel fees" -- § 8.3 requires Sea Breeze to indemnify and defend the trustees against "all losses, costs, damages, liabilities and expenses," including reasonable counsel fees, "arising out of a breach by [Sea Breeze] of its warranties, representations and covenants" under the contract. In Massachusetts, indemnity clauses must be "fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass. App. Ct. 100, 107, 616 N.E.2d 829 (1993). See James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669, 88 N.E.3d 1133 (2018), quoting from J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795, 494 N.E.2d 374 (1986) ("[W]e construe a contract as a whole, so as 'to give reasonable effect to each of its provisions' "). Unlike the § 18.10 "Counsel Fees" provision, § 8.3 references breaches of the contract's "warranties, representations and covenants." Construing the contract "as a whole" and giving "reasonable effect to each" provision, § 8.3 must be construed to refer to the defense and indemnity of third-party claims or other matters apart from "litigation regarding the rights and obligations of the parties [to the] contract," as contemplated by § 18.10 of the contract. See Astrolabe, Inc. v. Esoteric Technologies Pty, Ltd., U.S. Dist. Ct., No. 01-11352, slip op. at *16, 2002 WL 511520 (D. Mass. March 29, 2002) (where indemnity provision referenced "only breaches of ... 'covenants, warranties, and representations' and not each party's obligations under the contract," court held that parties intended any indemnification rights to arise out of suits from third parties, and rejected claim for costs in action between parties to the contract).
Finally, the judge did not abuse his discretion in awarding the trustees a total amount of $82,126 ($70,000 in attorney's fees and $12,126 in costs). See Linthicum v. Archambault, 379 Mass. 381, 388, 398 N.E.2d 482 (1979) ("[T]he amount of a reasonable attorney's fee is largely discretionary"). Here, the trustees sought an award of $111,802 in attorney's fees and $12,126 in costs. In calculating the final award, the judge considered the requisite common-law factors for analyzing the reasonableness of requested fees, including *365 "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney[s], the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Id. at 388-389, 398 N.E.2d 482. He determined that the claimed costs and attorney billing rates were reasonable. However, he reduced the requested attorney's fees by $41,802 because the trustees did not succeed on certain counterclaims, and due to inefficiencies created by transitioning the case among different lawyers. This is the precise type of inquiry and analysis mandated by Massachusetts law and we discern no abuse of discretion in the judge's decision here. See Brady v. Citizens Union Sav. Bank, 91 Mass. App. Ct. 160, 161-162, 71 N.E.3d 925 (2017).[13]
Judgment affirmed.

Sea Breeze also alleged violation of the covenant of good faith and fair dealing, and sought specific performance and an accounting.

Section 5.1 of the contract defines "Approvals" as the "permits and approvals from state, county, municipal and federal authorities."

Section 2.2(c) provides:
"In the event the [c]ontract is extended beyond the 24 month Approval Period (into the 'Extension Period'), the additional Two Thousand and 00/100 Dollar ($2,000.00) monthly deposits will continue to be made, however, they will not be credited against the Purchase Price and shall he retained by the Seller as separate consideration for such extension periods. These additional deposits shall be referred to as the 'Extension Payments.' "

Massachusetts cases often use the terms "merger clause" and "integration clause" interchangeably. See, e.g., Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 48, 809 N.E.2d 1017 (2004) (referencing "an integration [or merger] clause"). For purposes of our analysis here, we intend no distinction between the two.

As the Larkins share a surname, we refer to them by their first names to avoid confusion.

The trustees claimed that the Bove letter was subject to the attorney-client privilege, and did not provide it to Sea Breeze in discovery. Viewing the evidence in the light most favorable to Sea Breeze, we accept that Jarema shared the letter with Patrick.

Sea Breeze never made any monthly payment of $3,000 as contemplated in the Bove letter.

The judge determined that the trustees' counterclaim for breach of the covenant of good faith and fair dealing was moot. The parties do not challenge that ruling on appeal.

A second judge subsequently allowed Sea Breeze's motion for partial summary judgment as to the trustees' counterclaim for interference with advantageous relations.

We are not persuaded by Sea Breeze's argument that the trustees were not the "prevailing party" because the judge declined to award damages on their counterclaims. As discussed, supra, the present litigation stemmed from and centered on Sea Breeze's claim, rejected on summary judgment, that the contract was orally amended and breached by the trustees. We agree with the judge's determination that the trustees "were far more successful than was Sea Breeze in achieving their respective goals."

The trustees also seek reasonable attorney's fees and costs incurred on appeal. The plain language of § 18.10 of the contract entitles them to such an award. Accordingly, the trustees may submit to this court an application for appellate attorney's fees and costs, with any appropriate supporting materials, within fourteen days of the date of the rescript. See Fabre v. Walton, 441 Mass. 9, 10-11, 802 N.E.2d 1030 (2004). Sea Breeze shall have ten days thereafter to respond.