NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-639

ABRAHAM KASPARIAN, JR.

vs.

TRANSITIONS CENTERS, INC., & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff filed an eleven-count complaint in Superior Court arising from the decision of the defendant, Transitions Centers, Inc. (Transitions), a nonprofit corporation providing services to individuals with certain disabilities, to rescind an offer of employment to the plaintiff after a background check revealed his criminal history. The defendants moved to dismiss on the basis that the complaint failed to state a claim upon which relief could be had. The judge allowed the motion and the plaintiff appealed. We now affirm.

---

[1] Lee Chamberlain, Keith Bradley, Jeni Landers, Ellen Chamsarian, Scott Chausse, and Kristi Dolbec, all employees of Transitions.

Background.  "[W]e accept as true the facts alleged in the plaintiff['s] complaint[ ] and any exhibits attached thereto, drawing all reasonable inferences in the plaintiff['s] favor." Cormier v. Lynn, 479 Mass. 35, 37 (2018), quoting Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 595 (2017).  After the plaintiff registered with an online job-search platform and responded to preliminary questions posed by prospective employers, a Transitions employee contacted the plaintiff and extended an offer for the plaintiff to interview for a job as a driver.  The job posting did not mention anything about a background record check (CORI),[2] but did list various qualifications a person should have in order to be considered for the position.

The plaintiff interviewed for the position and submitted satisfactory references. He was offered the job, which he accepted.  Subsequently, a Transitions employee contacted the plaintiff and rescinded the offer of employment after the plaintiff's CORI revealed that he had been convicted of multiple offenses in 2002, including armed assault with intent to murder. A Transitions employee promised that if the plaintiff could

_____

[2] A CORI report is a "Criminal Offender Record Information" report, i.e., a criminal background check.  See Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 280 (2020).

2

"[c]lean up the CORI," Transitions would reinstate his employment.  Alongside this promise, the Transitions employee promised to supply a letter to the plaintiff detailing that his employment would be reinstated if the CORI records could be sealed.  The letter was intended to assist the plaintiff in a prospective motion to seal the relevant records; however, Transitions never provided the letter.  In the process of rescinding the plaintiff's employment offer, various employees within the Transitions organization viewed and transmitted the plaintiff's CORI report and shared a copy with the plaintiff himself, upon his request.

The plaintiff thereafter filed this suit, alleging numerous statutory violations including violations of the CORI statute, G. L. c. 6, § 172 (count I); the Whistleblower Act, G. L. c. 149, § 185 (count IV); the Wage Act, G. L. c. 149, § 148 (count V); the wiretap statute, G. L. c. 272, § 99; and the right to privacy, G. L. c. 214, § 1B (count VI). The plaintiff also alleged numerous tort-based claims including intentional infliction of emotional distress (Counts II, VIII, and IX); negligence (Count III); breach of implied contract (count VII), "Loss of Income and Financial Harm" (count X); and sought declaratory judgment (count XI).

3

Discussion. "In evaluating [a] motion to dismiss, we accept the factual allegations in the . . . complaint as true, but not the legal conclusions cast in the form of factual allegations." Sandman v. Quincy Mut. Fire Ins. Co., 81 Mass. App. Ct. 188, 189 (2012). "We review the grant of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, and determining whether the allegations plausibly suggest that the plaintiff is entitled to relief." Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022).

1. CORI statute. The plaintiff alleges in count I that the defendants violated G. L. c. 6, § 172, which provides that CORI data must be maintained by the State in a database and limits access by others. See G. L. c. 6, § 172 (a). The statute specifically authorizes employers to receive CORI data for the purpose of evaluating prospective employees. G. L. c. 6, § 172 (a) (3) (i). See Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 285 (2020) (employers entitled to review CORI of prospective employees). Because none of the allegations aver that the defendants received the plaintiff's CORI for a reason unrelated to "evaluat[ing] current and prospective employees," the

4

plaintiff has not alleged that any defendant has violated the statute; his claim fails as a result.  See G. L. c. 6, § 172 (a) (3) (i).

2.  Intentional infliction of emotional distress.  In counts II, VIII, and IX, the plaintiff fails to state a claim for intentional infliction of emotional distress because the complaint cannot be read to allege the sort of extreme and outrageous conduct necessary to establish the elements of that tort.  See Polay v. McMahon, 468 Mass. 379, 385 (2014).  Denying someone employment opportunities because of things they have done in the past, while understandably distressing to the rejected person, is not "beyond all possible bounds of decency" and "utterly intolerable in a civilized community."  Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976), quoting Restatement (Second) of Torts:  Outrageous Conduct Causing Severe Emotional Distress § 46 comment d, at 72 (1965).  See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 56 (2020) (former employee's allegation that employer was intentionally abusive and created intolerable working conditions did not constitute extreme and outrageous conduct).

3.  Negligence.  The plaintiff's claim of negligence in count III is supported only by his statement that the defendants were negligent, a legal conclusion.  The complaint does not

allege any facts demonstrating that the defendants owed the plaintiff a duty of care, nor does the complaint specify the nature and origin of that duty or describe how any such duty was breached. See Heath-Latson v. Styller, 487 Mass. 581, 584 (2021). Since bare legal conclusions are insufficient to demonstrate an entitlement to relief, the claim fails. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) ("we do not accept legal conclusions cast in the form of factual allegations").

4. Whistleblower statute. In count IV, the plaintiff alleges that the defendants violated G. L. c. 149, § 185, which prohibits retaliatory action by an employer against an employee who engages in certain conduct outlined in the statute. G. L. c. 149, § 185 (b) (1). "Employer" is defined to include only a subset of public employers. G. L. c. 149, § 185 (a) (2). The plaintiff has not alleged that Transitions is a public entity as defined by the statute, so the claim cannot proceed.

5. Wage Act. In count V, the plaintiff lists numerous laws, including "any other state or municipal law, statute, public policy, order or regulation affecting or relating to the claims or rights of public employees" to support his claim that he was never paid wages owed to him on the date of discharge. Compare G. L. c. 149, § 148 (requiring some employers to pay

6

employees within a certain number of days of the date of discharge).  Putting aside that the allegations are not precise enough to put the defendants on notice of the claims being lodged against them, see Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974), the plaintiff has not alleged that he was ever permitted to perform any work at the job, and therefore has not established that he is entitled to any earned but not disbursed wages.

6.  <u>Violation of privacy</u>.  In count VI, the plaintiff claims that the defendants violated the wiretap statute, G. L. c. 272, § 99 (C) (1), (C) (4), which makes it unlawful (with certain exceptions) for "any person" to secretly intercept "any wire or oral communication" or use such intercepted communications.  G. L. c. 272, § 99 (C) (1), (4) and § 99 (Q) (conferring upon aggrieved persons a civil cause of action to sue under the statute).  The complaint does not allege that the defendants at any point engaged in conduct that could be understood to run afoul of that statute's proscriptions.

The plaintiff also alleges a number of violations of the Privacy Act, G. L. c. 214, § 1B, in count VI, which authorizes a Superior Court judge to award damages to recompense interferences with one's privacy.  See G. L. c. 214, § 1B.  The first alleged violation of the statute is the defendants' breach

7

of a supposed contract to seal the plaintiff's CORI sheet.  As we explain below, the complaint does not allege the existence of a legally valid contract.  Consequently, this theory fails.

The plaintiff next alleges that the defendants violated the statute by sharing the plaintiff's CORI among themselves and with the plaintiff himself.  However, the defendants were specifically authorized by the CORI statute to have access to the plaintiff's CORI in connection with their consideration of the plaintiff's employment application.  See G. L. c. 6, § 172 (a) (3) & (a) (3) (i).  The complaint does not allege that the defendants shared the report with the public at large or disseminated it to persons who did not have a legitimate business purpose in reviewing it; therefore, the complaint fails to allege an unreasonable interference in the plaintiff's privacy.

Furthermore, sharing the plaintiff's records with the plaintiff himself could not have affected the plaintiff's privacy because the facts of his own criminal record are within his knowledge.  In any event, Transitions was required by law to provide the plaintiff with a copy of the CORI relied on to rescind his offer.  See G. L. c. 6, § 172 (c).

7. <u>Breach of implied contract</u>.  The plaintiff alleges breaches of two purported agreements.  First, the plaintiff

8

states that Transitions and its employees breached an agreement to reinstate the plaintiff if he managed to seal his CORI. He does not allege that he ever did "[c]lean up the CORI," though, so the condition necessary for Transitions' obligation to perform never has come due and the plaintiff therefore has not alleged a breach. See Ferguson v. Maxim, 96 Mass. App. Ct. 385, 391-395 (2019) (dismissal proper where failure to perform condition precedent is undisputed). See also Hanover Ins. Co. v. Cape Cod Custom Home Theater, Inc., 72 Mass. App. Ct. 331, 336 (2008), quoting Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005) (a condition precedent is an event which must occur before any obligation to perform arises under a contract).

The complaint also alleges that the defendants breached an agreement to provide the plaintiff a letter that he could attempt to use to establish good cause to have his CORI records sealed. Contract formation requires consideration. See Vasconcellos v. Arbella Mut. Ins. Co., 67 Mass. App. Ct. 277, 280 (2006) ("An oral contract, like any other, requires an offer, acceptance, and consideration"). Consideration is "satisfied if there is either a benefit to the promisor or a detriment to the promisee." Fall River Hous. Joint Tenants Council, Inc. v. Fall River Hous. Authority, 15 Mass. App. Ct.

9

992, 993 (1983), quoting <u>Marine Contractors Co</u>. v. <u>Hurley</u>, 365 Mass. 280, 286 (1974). Here, the plaintiff did not offer to do anything in exchange for the defendants' promise to supply the letter. In other words, "[t]here was no legal benefit to the promisor nor detriment to the promisee, and thus no consideration." <u>Congregation Kadimah Toras-Moshe</u> v. <u>DeLeo</u>, 405 Mass. 365, 366 (1989), citing <u>Marine Contractors Co</u>., <u>supra</u>. The offer to provide a letter was therefore an unenforceable promise. Moreover, the plaintiff does not allege that he undertook any course of action in reasonable reliance upon the promise, and thus cannot show an entitlement to relief under a quasi-contract promissory estoppel theory. See <u>Columbia Plaza Assocs</u>. v. <u>Northeastern Univ</u>., 493 Mass. 570, 585 (2024).

8. <u>Remaining claims</u>. count X, "Loss of Income and Financial Harm," is derivative of other claims, relating only to remedy, and so does not allege any claim in itself. The final remaining claim, count XI, seeking declaratory judgment, similarly cannot go forward since all of the underlying claims

10

potentially justifying the requested declaratory relief have been dismissed.

Judgment affirmed.

By the Court (Massing, Singh & Grant, JJ.[3]),

Clerk

Entered: June 28, 2024.

---

[3] The panelists are listed in order of seniority.